LUDWIG VON BAUMBACH *vs.* ALBERT BADE, im-
pleaded with others, Appellant.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard June 23.]                    [Decided December 14, 1859.

*Constitutional Law—Stay of Proceedings—Mortgage.*

The act of May 15, 1858, which provided that defendants in actions to fore-
close mortgages which were executed prior to its passage, should have six
months time in which to answer the complaint, and that the mortgaged
premises should not be sold upon the judgments, except upon six months'
previous notice of the time and place ; does not violate the provisions
of the constitution of the United States, and of the constitution of Wis-
consin, which declare that no laws shall be passed impairing the obligation
of contracts ; nor is it in conflict with § 9, of Art. I, of the constitution of
Wisconsin, which declares that " every person is entitled to a certain rem-
edy in the laws, for all the injuries or wrongs which he may receive in his
person, property or character."

Although § 9, Art. I, of the constitution of the state of Wisconsin, declares
that " every person is entitled to a remedy in the laws for all injuries or
wrongs, which he may receive in his person, property or character;" and,
although the remedy afforded by existing laws enters into and forms a part

| 9 | 559 |
|---|---|
| 96 | 198 |
| 97 | 265 |
| 97 | 271 |
| 9 | 559 |
| 100 | 496 |

| 9 | 559 |
|---|---|
| f106 | 542 |

| 9 | 559 |
|---|---|
| 109 | 213 |
| 109 | 215 |
| 109 | 216 |
| 109 | 224 |

| 9 | 559 |
|---|---|
| 187 US | 440 |

Von Baumbach vs. Bade.

of the obligation of contracts, yet it is in the power of the legislature to amend, change or modify the laws governing proceedings in courts, both as to past and future contracts, if they leave the parties a substantial remedy, according to the course of justice as it existed at the time the contract was made.

The legislature may alter or vary existing remedies as they please, provided that in so doing their nature and extent is not so changed as materially to impair the rights and interests of the parties.

The legislature may enact a statute of limitations by which the remedy upon existing contracts, if not prosecuted within a specified time, may be entirely defeated. So they may pass acts abolishing imprisonment for debts previously contracted, recording acts by which the older grant of real estate otherwise valid, is postponed and rendered void, as to a younger one, and other acts of a similar nature ; and yet such acts will be sustained as constitutional and binding.

So far as the constitution of the United States, or of Wisconsin, reaches or affects the alterations of the remedy on contracts, such alterations are matters of sound discretion with the legislature. It has the power within the limits of the constitution, to control the remedy and to determine whether any change or modification of it is necessary, and what change, and whether parties to the contract are left with a substantial remedy according to law, as it existed before the change, subject however to a final determination by the courts of the constitutionality of such modifications or changes.

By the act of the 15th of May, 1858, the remedy of mortgagees as it previously existed, is substantially continued. No new conditions are engrafted on the remedy, the form and mode of proceedings in the action, the nature and extent of the judgment, and the rights under it are the same as before, except only in the matter of the time which is required for these purposes ; and that such a change does not infringe or materially impair the obligation of the contract.

The legislature may regulate at pleasure the modes of proceeding in the courts in relation to past contracts as well as future ones. It may limit or extend the time for answering, or taking any other step in an action in the courts. The only limit or qualification to this power is, that the legislature must confine their action within the bounds of reason and justice, and not so prolong the time in which legal proceedings are to be had, as to render them futile and useless in the hands of the creditor, or to seriously impair his rights or securities.

Although changes in remedies are in general unwise and unjust, yet if for any cause the public good demands a relaxation of them, it becomes the duty of the legislature, by proper and reasonable modifications, so to change

them as to meet the wants of community and afford the relief which the public good demands.

In determining whether such changes are reasonable and just, and demanded by the exigencies of the times, courts must look behind the statute and take notice of the causes which led to its enactment.

This action was commenced against Bade and his wife, as mortgagors, and a large number of others, as subsequent incumbrancers. After judgment Bade appealed to this court. The facts are state fully by the chief justice in his opinion.

This case presented the same points as are discussed in *Ogden vs. Glidden, supra,* 46, and *Weissner vs. Wells,* id., 471, and it is deemed proper to give the brief of one counsel on each side of the constitutional question discussed; and the arguments of Messrs. Waldo & Ody, in *Ogden vs. Glidden,* and of Messrs. Smith & Salomon, have been selected for that purpose. This case was argued by Messrs. Downer, Ladue & Jenkins, for the appellant.

*Mr. Waldo.*—1. The judgment is erroneous in that it is in direct conflict with the act entitled " an act relating to foreclosure of mortgages and the sale of land under such foreclosure," approved May 15th, 1858. That act plainly requires that, in every such case, the judgment " shall be for the sale of the premises upon six month's notice of such sale," &c. § 2, Gen. Laws, 1858, 134. From the subsequent portion of the same section it is obvious that the intention of the legislature was to make this requirement of six month's notice apply as well to judgments to be rendered in actions then existing, as to judgments in actions to be commenced, after the law went into effect; for it is inconceivable that they should, in unmistakable terms, make the long notice apply to judgments actually rendered before the passage of the act, and in the same breath exempt those to be rendered in actions that might be commenced after the passage and before the publication of the act. The intention of the legislature must always control in the construction of a statute. 12 J. R.; 176; 15 J. R., 358; 3 Cow., 89; 21 Wend., 211; 2 Cranch, 10; 2 Peters, 662; 1 Pet., 64; 4 Cush., 314.

2. The act in question is constitutional. The law making power is an attribute of sovereignty, and, in the legislature of one of the states, is general, within the limitations of the con-. stitutions of the United States and of the state, and not *special*

or dependent upon particular grants in the constitution. Smith's Com., §§ 179, 180, 181.

The courts will not decide that the legislature have broken over the constitutional limitations, except in a very clear case. *Gibbons vs. Ogden,* 9 Wheat., 188; *Fletcher vs. Peck,* 6 Cranch, 128 ; *Dartmouth College case,* 4 Wheat., 625 ; 3 Seld., 109.

That the legislature may rightfully act upon the remedy, and change, add to, diminish, or in any way modify the remedy, as well upon past as future contracts, so long as they confine their action fairly to the remedy, will be admitted. They may determine, without reference to the date of the contract sued on, what in any class of cases shall be the form of action, the form of pleading, the form and mode of issue and service of process, the time, manner and place of appearing and of taking default, the form of the issue, the time and mode of taking testimony and of trial, the times and places of the sittings of the courts, the mode and time of entering and executing the judgment, and all other matters relating simply to the form, time and manner in which the state, acting through the courts will lend its aid in enforcing civil rights. And the courts cannot regard the inconvenience or the inexpediency of an act of the legislature in considering its constitutionality. Story's Com. on the Const., §§ 425, 426, 1379; Smith's Com. on Stat. and Const., § 254; *The People vs. Morrell,* 21 Wend., 563, 584.

It may, as to past contracts as well as future, shorten the period of limitation, exempt household furniture and implements, abolish imprisonment for debt, and abolish distress for rent. 4 Wheat., 200; 1 How., 315; 12 Wheat., 213; 1 Kernan, 281.

3. If the legislature could not alter the remedy as to past contracts, it would follow that contracting parties could by bare agreement perpetuate, as to their contract, existing remedies beyond the control of the legislature, which would be absurd. 3 Kernan, 305.

4. No rule is better settled than these, to wit: 1. As to the obligation and construction of contracts, the law of the place where the contract is made and to be executed will be regarded everywhere. 2. The remedy, wherever the contract was made, will be governed by the law of the former. *Andrews vs. Herriot,* 4 Cow., 408; and a great number of cases illustrating these rules, collected and collated in a learned note to that case.

Von Baumbach vs. Bade.

The *lex loci contractus*, as to its nature, validity, construction, and effect, is supposed to enter into and form a part of every contract by the intention of the parties; and for that reason it goes with the contract, and is recognized as a part of it everywhere. If the law of the same place regulating the remedy, entered in like manner into and formed a part of the contract, it also would travel with the contract into all states and jurisdictions, which, as we have seen, would be against the uniform rule, and in the nature of the case would be impossible of execution.

5. The only restriction in the state constitution, except the one borrowed from the constitution of the United States, is that imposed by § 9 of our bill of rights, by which " every person is entitled to a certain remedy" " for all injuries or wrongs," " conformably to the laws." It is believed that this provision in the bill of rights is complied with, whatever changes may be made in the remedy, whenever a " certain remedy" of a substantial and reasonable character is left. Section 9 is believed to have no special reference to past contracts, and to be intended not particularly to guard against retrospective laws, but simply as a general guaranty by the government to every citizen of a certain reasonable remedy in the laws, at all times and for all injuries and wrongs " conformably to the laws," which the legislature'shall from time to time in their wisdom enact. The last clause qualifies the entire section and forms a part of every contract made under it, as much as the preceding portion of the section.

6. The only restriction in the constitution of the United States, borrowed and repeated in our state constitution, which can be supposed to apply, is that which forbids the enactment of laws impairing the obligation of contracts. That the legislature may regulate and change the remedy, we have already seen. We have also seen that they must not so change the law of the remedy as to have no certain remedy in the laws for the wrongs of the citizen. That the legislature cannot, under the color or pretence of regulating the remedy, impair the obligation of a contract in any material particular, thus doing indirectly what they are expressly forbidden to do directly, we admit. It is believed that the only true rule in judging of the constitutionality of acts of the legislature in this respect, which have for their ostensible object to regulate the remedy, is to regard all statutes as constitutional and valid, unless upon bare inspection of the act, the court are

able to say that the intention, under the color or false pretense of modifying the remedy, to materially impair the contract itself or its binding force, is so plain as to leave no rational doubt. Smith's Com., §§ 256–7–8–9, 265–6; *Sturges vs. Crowninshield*, 4 Wheat., 200, 201; *Green vs. Biddle*, 8 Wheat., 1, 75; *Bronson vs. Kinzie*, 1 How., 311; *Nelson vs. Allen*, 1 Yerger, 360; *Quackenbush vs. Danks*, 1 Denio, 128; *King vs. Dedham*, 15 Mass., 447; *Foster vs. Essex Bank*, 16 id., 245; *Bigelow vs. Prichard*, 21 Pick., 169; *Call vs. Hagger*, 8 Mass., 430; *McCracken vs. Hayward*, 2 How., 608; *Morse vs. Gould*, 1 Kern., 281.

To determine whether such covert and fraudulent intent is discoverable in this act, we have only to look at other legislation in this state and in other states, *in pari materia;* and thence to determine whether the action of our legislature is so grossly against the common sense of mankind and the recorded wisdom of other legislatures, as to force upon the mind the conviction that it was *not their design* to leave a certain reasonable remedy to the mortgagee, and that it was their design to make a covert attack upon the contract itself. For this purpose, look at our former foreclosure laws in equity and by advertisement; at our laws as to sale of real estate on execution; at the laws of Maine, Massachusetts, Ohio, Illinois, and many other states, governing proceedings in the foreclosure of mortgages and sales under execution for debt.

7. The mortgage law in question affects the remedy simply, and not in any manner the nature, construction, obligation, validity, or effect of the contract. The contract in question, in legal contemplation, was that the mortgagee should hold the land as security for his debt, and in case of default, that he should have the whole of it sold under the order of court, freed from the equity of redemption, to make the debt and costs. All of that is still preserved to him. True, the mode of proceeding to procure such absolute sale to be made, has, since the date of this mortgage, been altered, not only once, but three times, to-wit: once in the act creating five terms of the circuit court in Milwaukee county, instead of three, giving more frequent opportunity to apply for such order; again, in the adoption of the present code of procedure, by which the proceeding was made more rapid than before; and finally, by the law now complained of, by which the proceeding becomes more tardy. If the respondent had a vested right in the remedy, as it was at the date of his contract, that

Von Baumbach vs. Bade.

right must be reciprocal, and he must foreclose according to the law of 1849. That, of course, is absurd. The contract is unimpaired; the remedy is a little more tardy, and that is all that can be said. A substantial remedy remains.

8. The fact that the act is made to apply to past contracts, and even to contracts already in suit, does not render it invalid. The legislature have the power to give a Statute not imposing a penalty, nor creating a forfeiture, a retroactive effect. The courts, on grounds of general policy, can only say that such intention will not be presumed, but must be clearly expressed. 4 Wend., 210; 3 Denio, 274; 8 Barb., 502; 3 Kern. 302; 4 Conn., 209; 3 Dall., 386; *Bridgeport vs. Housatonic R. R. Co.;* 15 Conn., 494; 2 Peters, 280; 15 Mass., 447; 1 Hill, 324. In the present act, that intention is plainly declared.

*Mr. Smith.*—The only question in this case is, whether chap. 113 of the General Laws, of 1858 is applicable to it. The action was commenced after the passage and publication of that law, and judgment was rendered without regard to it, mainly on the ground that the law, as far as it related to mortgages given before its passage, was unconstitutional.

At the time of the application of judgment this question was presented to the court below, which held the law to be unconstitutional as applied to mortgages executed before its passage, and rendered judgment accordingly. If that ruling is sustained, the judgment must be affirmed, as it is otherwise regular.

Mr. Smith here cited the provisions of the act at length, and continued: We will presume that it provides, what was probably intended, that every judgment for the sale of mortgaged premises thereafter made, should be for the sale of said premises, upon six months notice of such sale; and then we claim that, as applied to mortgages then in existence, it is, as well as the provisions of § 1, unconstitutional and void, as " impairing the obligation of contracts."

Obligation means binding power, the obligation of contract means that tie, power, or law, which binds the party to fulfil his contract. The obligation of every contract in the civilized world is a double one, a moral obligation, created by the law of nature, and a civil obligation, created by human law, and enforced by human law. It is this latter obligation which was intended to be reached by the constitutional inhibition. To preserve inviolate the obligation of contracts,

as that obligation existed, and was recognized by the civil laws in force at the time the contracts were made, was the intention of the constitutional prohibition, not to preserve inviolate the moral obligation which no human law, no constitutional mandate, could reach. This civil or legal obligation is such only, because it is enforced by civil laws; unless there is a procedure, a remedy prescribed by law to enforce a civil obligation, that obligation is a nonentity. Take away or cripple the remedy to enforce a contract, and you take away or impair its obligation. Hence the idea that the legislature could with impunity impair the obligation of contracts, by working upon the remedy, has long since been discarded. In *Green vs. Biddle*, 8 Wheat., 17, the court say: "It is no answer that the acts of Kentucky, now in question, are regulations of the remedy and not of the right to lands. If those acts so change the nature and extent of existing remedies, as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests." So in *Sturges vs. Crowninshield*, 4 Wheat., 197, the court say: "A contract is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract." Again, in *Ogden vs. Saunders*, 12 Wheat., 327, the same court say: "The great principle intended to be established by the constitution was the inviolability of the obligation of contracts, as the obligation existed and was recognized by the laws in force at the time the contracts were made. Whether the law professes to apply to the contract itself, to fix a rule of evidence, or a rule of interpretation, or to regulate the remedy, it is equally within the true meaning of the constitution, if it, in effect, impairs the obligation of existing contracts."

But it has often been claimed, that in regulating the remedy the legislature had unlimited power, that it was the province of the law-giving power to provide a remedy, that they might subsequently change and alter it at their pleasure, and that, if they did not absolutely abolish all remedy, or clog it with such conditions that it was not worth while to pursue it and so virtually abolish it, they did not violate the constitutional prohibition. This cannot, however, be the true rule, if that constitutional clause shall retain vitality. If the legislature abolish all remedy, they annihilate the legal obliga-

tion of the contract entirely. But the constitution says that the obligation of contracts shall not be *impaired*, not that it shall not be annihilated. Of course a total annihilation is within the provision, but it is not the only case. To lessen, change, or alter is to impair the obligation of contracts. Now, if it is conceded that the legislature cannot abolish the remedy, as that would annihilate the obligation of the contract, it is clear that they cannot change, alter, or lessen the remedy of existing contracts to such an extent that their obligation would thereby be changed, altered, lessened, or impaired.

We do not claim that the legislature has no power in any manner to change or alter the remedy on existing contracts, or that any such change would violate the constitution. Such a construction would be just as unjust as to say that the legislature has an unlimited power over the remedy. It is true that the remedy is closely interwoven with the contract, but it is not the contract, nor the obligation of the contract itself, it is only the means by which that obligation receives vitality. The constitution ought to receive such a construction that the objects which it had in view should be fulfilled. It was, undoubtedly, the intention, by this constitutional prohibition, to insure the inviolability of the obligation of existing contracts, not to cripple the legislature in the exercise of its conceded, necessary and legitimate powers, the power to provide, change, and alter remedies, as expediency might require; but it was also the intention of that clause to prevent any abuse of that sovereign legislative power; and we insist that the only safe and true rule, and that which conforms most to the spirit of the constitution, is this. Laws regulating the remedy merely, may be passed by the legislature, and may be made to apply to past as well as future contracts; but when it appears on the face of any such law, that the object of the law was, and when its scope and effect must necessarily be, not a change or alteration in the remedy for the sake of doing complete justice to the parties, but to effect that indirectly which could not be done directly, to alter, change, or impair the obligation of contracts, then such a law, though it profess to regulate the remedy merely, is unconstitutional and void, as impairing the obligation of contracts. *Planter's Bank vs. Sharp*, 6 How. 301, 330; *Blair vs. Williams*, 4 Litt. 34; *Lapsley vs. Brashears*, id. 47, 53, et seq.; *McKinney vs. Carroll*, 5 Mon., 97; *Grayson vs. Lilly*, 7 Mon., 6; *January vs. January*,

7 Mon., 542; *Pool vs. Young*, 7 Mon., 587; *Quacken-bush vs. Danks*, 1 Denio, 128; S. C., 1 Comst., 129; *Morse vs. Gould*, 1 Kernan, 281; *Holmes vs. Lansing*, 3 Johns. Cas., 75.

In the case of *Bronson vs. Kinzie*, 1 How., 311, which is directly in point, Chief Justice Taney, who delivered the opinion of the court, expressly admitted the legislative power to make alterations concerning the remedy merely, provided they do not impair the obligation of contracts.

In that case, the court declared a law of Illinois to be un-constitutional, which gave the mortgagor of then existing mortgages, twelve months to redeem the property from the purchaser at the sale and prohibited the sale from being made for less than two-thirds of its appraised value. Our legisla-ture, with that decision before them, and probably to avoid its application, gave our stay law a different feature; they did not prescribe a redemption, but they prescribed six months time to answer and six months' notice of sale, thus giving in fact the same time. The same object was intended to be reached, delay to the creditor, indulgence to the debtor. What in reality is the distinction between the stay law of Illinois of 1841, and the stay law of Wisconsin of 1858, in intention as well as in effect? None that we can see. The one was de-clared unconstitutional by the highest tribunal in this coun-try, the other, we trust, will be also so decided by the highest tribunal of Wisconsin.

Mr. Justice McLean, who delivered a dissenting opinion in the case of *Bronson vs. Kinzie*, thought that the doctrine of the court could not be maintained, because, if true, it could only be upon the ground that the remedy existing at the time of the contract became a part of the contract, and that then the legislature could not change it in any particular, and every contract had to be enforced in accordance with the rem-edy in existence at the time it was made. But this is not the doctrine upon which the court proceeded in deciding that case, nor the doctrine for which we here contend. But the same learned judge also contends that the distinction drawn by the court cannot be maintained. that if the legislature may not modify the remedy at their discretion, in regard to exist-ing contracts, they must be prohibited from making any change on the ground that judicial discretion could otherwise find no limit, that it would be preposterous to say the legisla-ture could prolong the remedy a week, a month, or three

months, but could not prolong it beyond that period. Now, we do not think that this reason is at all satisfactory. It may be difficult in a given case for the courts to say whether it is within the constitutional prohibition or not; but is that a reason why the courts should not exercise their power at all? It would be preposterous by rule of court to limit a time beyond which the legislature could not go, but it is not preposterous to allow the courts in every case of the kind that arises to decide whether it is constitutional and a proper exercise of legislative discretion, or unconstitutional and void. Each case must stand or fall for itself, no definite rule as to time can be laid down. And this is no greater difficulty than arises in the application of many other constitutional provisions. So our constitution provides, " excessive bail shall not be required, nor shall excessive fines be imposed, nor cruel and unusual punishment inflicted." What is excessive bail, what excessive fines, what cruel and unusual punishments? Again, " every person is entitled to a certain remedy, &c.; he ought to obtain justice freely, &c., completely and without denial, promptly and without delay," &c. Can any definite rule here be laid down by which you can judge at once whether or not a given law violates these provisions of the constitution? Is not here also each case left to stand alone and subject to judicial discretion only as to its constitutionality?

The case of *McCracken vs. Hayward,* 2 How., 608, and *Planters Bank vs. Sharp,* 6 id., 301, affirm and approve of the decision and doctrine in *Bronson vs. Kinzie.*

The next cases we rely upon are the Kentucky decisions of *Blair vs. Williams* and *Lapsley vs. Brashears,* above cited.

The case of *Danks vs. Quackenbush* above cited, which decided that a law exempting certain personal property from sale under execution, was unconstitutional as to then existing contracts, was overruled by the case of *Morse vs. Gould,* also cited; but in all of them the doctrine hereinbefore insisted on and laid down in *Bronson vs. Kinzie,* was recognized. In the latter case, (*Morse vs. Gould,*) the court cite with approval the following language used by chancellor Kent in the case of *Holmes vs. Lansing,* and applicable here, where that learned judge, after stating that the constitution could not have an eye to the details of legal remedies, declares that the provision in question was not violated " so long as contracts were submitted, without legislative interference, to the ordinary and regular course of justice, and the existing

Von Baumbach vs. Bade.

remedies were preserved in substance and with integrity." This indeed states the rule that we contend for in clear, expressive and succinct language.

Let us now apply the principles above elucidated to the case at bar. Before the passage of chap. 113, of the General Laws of 1858, and at the time when the mortgage in this case was executed, a foreclosure of a mortgage by action was subjected to all the ordinary rules and regulations of other actions in courts of justice in this state. The defendant had to answer the complaint, as he now has to answer the same in all other cases, within twenty days after service of the complaint upon him. Judgment followed in the usual course of proceeding, and by a long observed rule and practice of court the mortgaged premises were sold on six weeks' advertisement. The respondent, when he took the mortgage in this case, had a right to expect, that in case of default in the payment of the mortgage, he would, under the usual, ordinary and regular course of judicial proceeding, be able to procure a sale of the mortgaged premises to satisfy his claim. Default was made in the payment of the mortgage, but before any proceedings were instituted by him to enforce a foreclosure, the legislature passed the "mortgage stay law" as it may well be termed. That law professes to take a certain class of contracts, and among them this respondent's mortgage, out of the usual, ordinary and regular course of judicial proceedings and gives the defendant or defendants six months' time to answer. The legislature, in enacting the law, did not even trouble themselves to prescribe a change in the summons. The summons, as in all other cases, yet requires the defendant to answer within twenty days. And what class of cases is it that that statute professes to take out of the usual course and give the defendant nine times the time to prepare and put in an answer, that he has in all other cases? Just that class of cases in which practically the fewest answers are ever received. In all other litigated matters, no matter how complicate, how important the case may be, the defendant has to answer within twenty days; here, where there exists hardly ever any defense, he shall have six months. Six months to prepare and serve an answer! Then again, if the first part of § 2 means anything, it provides that the notice of sale for the mortgaged premises shall be six months. But further, that statute not satisfied with reaching all mortgages then executed, all proceedings of foreclosure then commenced, under-

takes even to meddle with judicial judgment and decrees already rendered, it applies the six months rule even to them. Nothing is sacred from this legislative mania for extension, not even rights vested by solemn judicial adjudications. This latter part of the law has no direct application to this case, but if any thing should be wanted to show the intention of the law giving power in passing the statute, this utter disregard of all rights of mortgage creditors, whether vested by judgment or not, exhibits still more strikingly the object that was intended to be reached by that law. They dare not touch the contract directly, they dare not give a right of redemption where none had existed before, for that had already been held unconstitutional by the highest tribunal in the country. We ask this court to read that law and then to say whether it does not clearly appear from the face of it, from every line in it, just as plainly as if it had been there written in so many words, that the object of it was, and its only object was, to give an additional indulgence to the debtor, an additional delay to the creditor, to reach that in an indirect way, which could not be reached in a direct way, to impair the obligation of all mortgage contracts then in existence by giving time to the defaulting debtors? We do not even ask the court to look to the circumstances under which this law was passed, to the conditions of the times, when sudden reverses in fortune punished the follies of the age, we only ask it to look to the law itself and there find the object for which it was passed. Was it not delay, delay in the enforcement of legal rights, of solemn contracts? And what is the effect of the law, if left in full sway and operation. Does it not reach what it was intended to reach? Does it not in fact impair the obligation of these contracts just as effectually as if the law had said that every mortgage debt was extended for one year after the time it would otherwise have been due by its contract? Was this a reasonable and proper exercise of legislative discretion in providing a remedy? Or was this law not rather a fraud upon the constitution which said that no law should be passed impairing the obligations of contracts; a cunning device to alter the obligation of the contract under the pretence of regulating the remedy? And now we ask this court, whether it will, by its solemn decision in this case, sanction this legislative fraud upon one of the most valuable constitutional provisions; palpable, clear, undeniable as that fraud appears upon the face of this law.

But we are told that the courts have nothing to do with the intentions the legislature may have had in passing a law, except so far as it is expressed in the law itself. Not so however, we trust, will this court hold. It is the duty of the courts to interpret the laws made by the law-giving power, and it is every day's practice to construe laws and give them effect according to the *intention* the legislature had in passing them. Courts in this country are the guardians that the people have placed at the shrine of the constitution, to preserve that inviolate against legislative aggression and usurpation. If then a law appears before this court under the guise of a legitimate exercise of legislative power, but really intended, as appears from the face of it, to strike at the vitality of the constitution, and if the scope and effect of that law must be in fact to violate the constitution, though under the guise of an innocent name, will this court shrink from declaring such law unconstitutional and void?

*By the Court,* DIXON, C. J. This case comes before the court upon an appeal from the judgment of the circuit court of Milwaukee county, rendered on the 10th day of July, 1858.

The facts, as they appear from the record, are these: On the 2d day of June, 1857, the defendant, Bade, executed and delivered to the plaintiff a bond, conditioned for the payment of six hundred and fifty dollars on the first day of March, 1858, with interest at the rate of twelve per cent. per annum; and to secure the payment of the sum mentioned in the bond, with the interest, did, at the same time, together with his wife, execute and deliver to the plaintiff a mortgage conditioned for the payment of said sum of money and interest, according to the condition of the bond, by which he mortgaged to the plaintiff in fee, certain lands, situated in the city of Milwaukee. The mortgage also contained the usual covenant or agreement, that in case of a failure to pay the principal sum or any interest which might accrue thereon, or any part thereof, or to pay the taxes, &c; that the plaintiff might sell the same at public auction, pursuant to the provisions of the stat-

ute authorizing the foreclosure of mortgages by advertisement.

Neither the principal nor interest having been paid, the plaintiff, on the 22d day of May, 1858, by the service of summons on the defendant, commenced his action to foreclose the mortgage. After the making of the mortgage and before the commencement of the action the legislature passed an act, chap 113, Laws of 1858, approved May 15th, and published May 18th, 1858, now repealed, the first section of which provided that, " in all actions and proceedings at law thereafter commenced under that portion of chapter 34 of the Revised statutes of 1849, entitled, ' of the powers and proceedings of courts in chancery on bills for the foreclosure or satisfaction of mortgages,' the defendant or defendants in such actions or proceedings should have six months' time to answer the bill of complaint filed therein after service of summons or publication of notice, as then required by law ; and that no default should be entered in any such action, until after the expiration of such time, any law to the contrary notwithstanding." The 2d section provided that " whenever in such action or proceeding, judgment should be entered or an order made by the court for the sale of mortgaged premises, it should before [be for] the sale of said premises, upon six months' notice of such sale, as thereinafter provided ; and that in all cases where before the passage of the act, judgment had been rendered in any of the courts of this state, or in the district court of the United States for the district of Wisconsin, in an action to foreclose a mortgage or mortgages, or where an order or decree had been made by any such court, for the sale of mortgaged premises, the mortgaged premises should be sold only upon six months' notice given of the time and place of such sale, which notice should be given in the manner provided in the act for giving notices of the sale of mortgaged premises."

By the 3d section it was made the duty of the sheriff, deputy sheriff, or other officer appointed by the court, to make sale of the premises immediately after receiving a copy of the order for the sale of mortgaged premises, upon which such proceedings had been instituted, to publish, or cause to be published, notice of the sale of such premises, (unless otherwise ordered by the court,) describing the same therein, as then required by law, in some newspaper of general circulation in the county, in which such premises were situated, at least once in each month, for the period of six months before sale of the same; and if no newspaper should be printed or published in said county, then the same should be published in some newspaper in an adjoining county, for the time aforesaid. It was further declared by said section, that no sale of mortgaged premises, under foreclosure by action, should be valid, unless made in accordance with the provisions of said act.

On the 10th day of June following, the defendant, Bade, by his attorneys, gave notice of his appearance in the action. On the 25th, he was served with notice that on the 3d day of July, the plaintiff would apply to the court for judgment. On the 3d. day of July, an order of reference was made by the court to a referee, to ascertain and report the amount due to the plaintiff on the bond and mortgage. The referee made his report which was confirmed, and on the 10th day of July the usual judgment of foreclosure, and for the sale of the mortgaged premises was made, except that the sheriff was directed to give public notice of the time and place of sale by advertisement in a newspaper published in the city and county of Milwaukee once in each week for six successive weeks, and twice a week for the last three weeks of said six. From this judgment the defendant appealed, and insists that it is erroneous and ought to be reversed: 1, Because judgment by default was entered against him before the expiration of the six

months, after service upon him of the summons, within which he claimed the right to answer the complaint: and 2, Because the mortgaged premises were ordered to be sold, upon six weeks' instead of six months' notice of the time and place of sale.

By the law, as it stood prior to the passage of the act above referred to, defendants in foreclosure, as in all other actions, had but twenty days, after service upon them of the summons, in the manner prescribed by law, in which to answer the complaint, and if no answer was made within that time, judgment by default might have been taken. There was no statutory provision fixing the time or manner of sale in such cases. The practice, (regulated by rule of court in analogy to sales of real estate on execution,) was to sell on six weeks' previous notice of the time and place of sales, unless the court otherwise ordered. Such was the law governing at the time of answering, and the entry of judgment by default; and such the practice of the courts, as to notice and time of sale, at the time the bond and mortgage in question were executed and delivered.

On the part of the plaintiff it is contended that the circuit court properly disregarded the provisions of the act, and proceeded to render judgment and direct a sale of the mortgaged premises as if it had not been passed. His counsel insists that the act is unconstitutional and void, because its provisions in relation to existing contracts violate the first subdivision of § 10, Art. I, of the constitution of the United States; and the 12th section of the first article of the constitution of this state, which prohibit the passing of any law impairing the obligation of contracts. The determination of the case depends upon the correctness of the position here assumed by the counsel for the plaintiff. The circuit court sustained them in it. If they are right the judgment must be affirmed, if wrong it must be reversed. This is not the first case in

which this question has been raised and discussed at the bar
of this court. It has, during the present term, been argued in
several cases, but as they were all actions pending at the time
of the passage of the act, and as we felt compelled to hold,
that the act did not apply to such actions, it became unneces-
sary and improper for us to consider it. Owing to the vast
interests affected by the act, the variety of opinions entertained
by different members of the profession in relation to its valid-
ity, the conflict of decision upon it in the several circuit
courts, and the degree of dissatisfaction and opposition with
which it was met in various quarters, the question becomes
one of much importance.

The question, whether contracts derive their obligation
solely from the acts and stipulations of the parties independ-
ently of the remedy given by law at the time they are made,
to enforce them, or whether the obligation consists in part in
the duty of performance, as it is then recognized and enforced
by the laws, has been the source of much perplexing debate
and doubt, and in its solution " all the acumen which contro-
versy can give to the human mind has been employed." It
is not now however either a new or an unsettled question.
If it were, or if we were permitted to determine it with refer-
ence alone to the provisions of the constitution of this state,
as it would have been had § 9, of Art. I, been omitted, then,
however much I might be inclined to yield to the powerful
logic of Chief Justice Marshall in delivering the opinion of
the minority of the court in the case of *Ogden vs. Sanders*, 12
Wheaton, 322 ; and the forcible reasoning of Mr. Justice Mc-
Lean dissenting, in the case of *Bronson vs. Kinzie*, 1 How.,
311, and come with them to the conclusion that the former
position is correct, and that the legislatures may vary, or re-
peal remedial laws at their pleasure ; yet, as § 9, of Art. I, of
the constitution of this state declares that " every person is enti-
tled to a certain remedy in the laws for all injuries or wrongs

Von Baumbach vs. Bade.

which he may receive in his person, property or character;" and as it has, with reference to the constitution of the United States, been authoritatively determined by the Supreme Court in the case last above cited, and in the subsequent case of *McCracken vs. Hayward*, 2 How., 608, that the remedy afforded by existing laws, enters into and forms a part of the obligation of contracts, I feel bound in the decision of the question, to be governed by the principles there established, and to treat it with reference to them. The doctrines there established are, so far as I can learn, the settled doctrines of all the states with reference to the same provisions in their own and the federal constitution. See *Morse vs. Gould*, 1 Kernan, 281, and cases there cited.

The construction which has been thus put upon that clause of the constitution of the United States, which prohibits the passage of laws impairing the obligation of contracts, makes it equivalent, in its effect, to the section of the constitution of this state, to which I have last referred; and hence the rules which have been established in reference to the former, may be deemed proper guides for our action with respect to the latter. I shall therefore, whilst acknowledging the binding force of the latter as the paramount law of the state, discuss the question with reference to the former provision alone and the adjudications which have been made under it.

It being determined that the remedy, or laws for the enforcement of a contract existing at the time it is made, enter into it and form a part of its obligation, it might perhaps be supposed that any repeal, change, or amendment of such remedy, or laws, which in any manner delayed or rendered the enforcement of the contract less complete and effectual, would be unconstitutional and void. But such is not the case. All the authorities agree that it is within the power of the legislature to repeal, amend, change, or modify the laws governing proceedings in courts, both as to past and future

contracts, so that they leave the parties a substantial remedy, according to the course of justice as it existed at the time the contract was made.

In the principal case of *Bronson vs. Kinzie, supra,* the court say : " Undoubtedly a state may regulate, at pleasure, the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every state to enable it to secure its citizens from unjust and harrassing litigation, and to protect them in those pursuits which are necessary to the existence or well being of every community. And *although a new remedy* may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy, may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the constitution."

In accordance with the principles here laid down, it has been held that the legislature may enact a statute of limitation, by which the remedy upon existing contracts, if not prosecuted within a specified time, may be entirely defeated or cut off; that laws relieving debtors from imprisonment for

Von Baumbach vs. Bade.

debts previously contracted, and recording acts by which the older grant of real estate otherwise valid, is postponed and rendered inoperative and void as to the younger, if the prior conveyance is not recorded within a limited time, are constitutional and valid.    Other laws of a similar nature might be named.

The result of the cases seems to be that the legislature may alter or vary existing remedies as it pleases, provided that in so doing their nature and extent is not so changed as *materially* to impair the rights and interests of the creditors.    Practically this rule may seem vague and unsatisfactory, but it is the most certain *general* one of which the nature of the subject admits.    The difficulty of applying its doctrines to particular cases, and of distinguishing between what are legitimate changes of the remedy, and those changes which, in the form of remedy, impair the right, has often suggested itself to the mind of courts when dealing with it.    No such difficulty is experienced with regard to that kind of legislation by which the legislature, by attempting to change the terms or conditions of the contract itself, would relieve the parties from the performance of something which they had agreed to do, or compel them to do something which their contract did not require.    So far, then, as the constitution of the United States reaches or affects alterations of the remedy, such alterations are, *first*, matters of sound discretion with the legislature, and, *secondly*, with the courts.    The legislature having the power within the limits above stated, to control, at their pleasure, the remedy, are, in the first instance, to determine for themselves whether any change or modification of remedy is necessary, and if so, what change, and whether parties to contracts are left with a substantial remedy, according to the laws as they existed before such change, subject to a revision in the last particular by the courts.

In disposing of such a question, the greatest safety is in

Von Baumbach vs. Bade.

keeping strictly within the line of established precedents; and yet, as remedies are liable to be, and are varied in such a great variety of ways, but little light can be expected from former decisions.

In the case of *Bronson vs. Kinzie,* laws of the state of Illinois, passed subsequently to the execution of a mortgage, which declared that the equitable estate of the mortgagor should not be extinguished for twelve months after a sale, under a decree in chancery, and which prevented any sale unless two-thirds of the amount at which the property had been valued by appraisers, should be bid therefor, were held to be unconstitutional and void. While the judgment obtained in a civil action, may for some purposes be considered a part of the remedy, it is not so for all; and the court say that the law did not act on the remedy merely, but upon the contract itself, by engrafting upon it new conditions unjust and injurious to the mortgagee; that it declared, after the mortgaged premises were sold under the decree of a court of chancery, the purpose and object of which, according to the laws as they stood at the time the mortgage was executed, was to cut off the equity of redemption of the mortgagor, and those claiming under him, subsequent to the mortgage, that the equitable rights of the mortgagor and judgment creditors should not be extinguished, but should continue as to the mortgagor twelve, and as to creditors, fifteen months after the sale; that it created in, and gave to the mortgagor and creditors, *new estates,* which before its passage had no existence.

As to the prohibition to sell, unless two-thirds of the value of the mortgaged premises, as fixed by appraisers, was bid, they say that although it acts apparently upon the remedy, and not directly upon the contract, yet its effect was to deprive the party of his pre-existing right to foreclose the mortgage by a sale of the premises, and to impose upon him con-

ditions which would frequently render any sale altogether impossible. The superadded condition that no sale should be made unless the sum specified was bid, was a denial altogether of the right to sell in cases where bids to that amount could not be obtained, and thus the obligation of the contract which could only be enforced by a sale of the premises, might be done away with and destroyed entirely.

The case of *McCracken vs. Hayward*, arose under the same statute laws of Illinois, and involved the same question last mentioned, except that it arose upon the sale of real estate upon an execution at law; the provisions of the statute as to valuation and bidding, having been applied as well to sales of real estate on execution, as to sales under decrees in chancery. The court arrive at the same conclusion in this, as in the former case, and by a like process of reasoning.

In the late case of *Curran vs. State of Arkansas*, 15 How., 304, the doctrine that the remedy forms, in part, the obligation of the contract, is distinctly repeated and re-affirmed. Mr. Justice Curtis, in delivering the opinion of the court, says: "But it by no means follows, because a law affects only the remedy, that it does not impair the obligation of the contract. The obligation of a contract, in the sense in which those words are used in the constitution, is that duty of performing it, which is recognized and enforced by the laws. And if the law is so changed that the means of enforcing this duty are materially impaired, the obligation of the contract no longer remains the same."

In this case it was held that several acts of the legislature of the State of Arkansas, by which they withdrew from the Bank of the State of Arkansas, of which the state was sole stockholder, and which had become insolvent, all its assets, both real and personal, and appropriated them to the use of the state, were, as against the creditors of the bank, unconstitutional and void, for the reason that they entirely

defeated the remedy, by leaving nothing out of which the debts could be satisfied. The learned judge, after adverting to the case of *McCracken vs. Hayward*, says: "The law now in question certainly presents a far more serious obstruction, for it withdraws the real property of the bank altogether from the reach of legal process, provides no substituted remedy, and leaves the creditor, as was truly said by the supreme court of Arkansas, in its opinion in this case, ' in the condition in which his rights live but in grace, and his remedies in entreaty only.' "

These are all the decisions of the supreme court of the United States which have any direct bearing upon the question now before us. Does it fall within either, or the principles laid down in them? I think ·not. It seems to me that giving them all the force of authority, the legislation here complained of must be sustained. By it the remedy of the mortgagee, as it previously existed, is in all its parts *substantially* continued. No new conditions are engrafted. The form and mode of proceeding in his action, the nature and extent of his judgment, and of his *rights* under it remain the very same. It can be carried into as full and complete execution as at any former period. No clogs or impediments are thrown in the way, either of obtaining or finally executing the judgment, except in the matter of the time which is required for those purposes.

Is the time required by law for its accomplishment, so much of the essence of every legal remedy, that it cannot be changed or extended by the legislature? If so, then the legislature is shorn of a large share of its power to regulate and control remedies. And if so, then, I do not see how " a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future." The power to limit or extend the time for answering, or within which any other step in an action shall be taken, is, and must be

conceded. It has been oftener exercised and less questioned than any branch of legislative power touching remedies. The only limit or qualification to its exercise is, that the legislature shall confine their action within the bounds of reason and justice, and that they shall not so prolong the time within which legal proceedings are to be had, as to render them futile and useless in the hands of the creditor, or seriously impair his rights or securities. Within these limits the legislature may safely exercise this power in such manner as they may deem most beneficial to the policy and internal economy of the state, and the interests of all its citizens.

And although such changes are, in general exceedingly unwise and unjust, yet if from sudden and unlooked for reverses or misfortune, or any other cause, the existing remedies become so stringent in all or a particular class of actions, that great and extensive sacrifices of property will ensue, without benefit to the creditor, or relief to the debtor, a relaxation of the remedies, becomes a positive duty which the state owes to its citizens. The general welfare of the community is committed to its care and keeping, and on fundamental principles of justice, it is bound by reasonable regulations to promote and protect it. In passing upon questions like the present, courts must look behind the statute itself, and take notice of the causes which led to its enactment, for otherwise they would be unable to determine whether its regulations are reasonable or not, or were demanded by the state of the times or the financial situation of the country. By so doing in the present instance, I think it can be clearly demonstrated that the passage of the laws before us, was an exercise of sound discretion on the part of the legislature. But independently of these, or like considerations, and comparing the remedy as it existed before the passage of the law, with it as it was afterwards, I cannot say that the delay occasioned by it is so great, or so unreasonable, or that it so obstructs or embar-

rasses proceedings for foreclosure on the part of the mort-
gagees, as to make it, under any circumstances, unconstitu-
tional and void. A complete and substantial remedy was
left them, according to the course of justice, as it was adminis-
tered before its passage, the only difference being that it was
less expeditious, but not so much so as materially to affect or
diminish their rights. All must admit, I think, that its un-
constitutionality is doubtful, and in such cases it is a well
settled rule of courts to resolve doubts in favor of the validity
of the laws.

I am of opinion, therefore, that the judgment of the circuit
court should be reversed, and the cause remanded for further
proceedings.

PAINE, J.   I concur with the opinion of the chief jus-
tice, that the mortgage stay law, as it is called, is a valid law
within the rule established by the supreme court of the Uni-
ted States, in *Bronson vs. Kinzie.* I think, also, that he has
correctly estimated the result of that rule, in saying, substan-
tially that it leaves the states at liberty to legislate as they
please in regard to remedies, subject to a judicial veto, if the
courts think the legislation too unreasonable to stand. But I
must be permitted to go farther, and say, that I have never
been able to see that the rule itself rests upon any solid
foundation of reason or principle.

The constitution of the United States prohibits the states
from passing laws which impair the obligation of contracts.
The question is, whether laws, impairing the remedies, come
within the prohibition. This clearly must depend upon the
question whether the remedy furnished by law at the time a
contract is entered into, constitutes its obligation. And which-
ever way this question is decided, it seems to me it must over-
throw the rule of *Bronson vs. Kinzie.* For if it be held that
the remedy does constitute the obligation of the contract, then

Von Baumbach vs. Bade.

it follows, necessarily, that the remedy cannot be diminished or impaired in the slightest degree, without impairing the obligation. This is not a question of discretion. It is not a question whether the obligation of contracts is impaired to an unreasonable extent; it is whether it is impaired at all. And so soon as courts have established the conclusion that the remedy is the obligation, the only further inquiry they can make with respect to any law, is whether it diminishes or impairs that remedy to any extent, not whether it does so to an unreasonable extent. Suppose a contract entered into for the payment of money on a day certain; if the state should pass a law that the party should not be bound to pay it until the next day, this would clearly impair the obligation of the contract, and it would be the duty of every court to hold the law void. It might be shown that strong reasons existed for the change, and that it was highly reasonable and proper in itself. But this could have no weight whatever. The answer would be that the constitution does not leave the states a discretion to impair the obligation of contracts in a reasonable manner, but that it prohibits them from impairing it at all. I think this conclusion, with reference to a law acting directly upon the obligation, will scarcely be questioned by any mind.

Now it may not be so clear that a law acting on the remedy only, would affect the obligation, as it was clear that the act did in the case supposed. But the moment this doubtful point is got over, and it is established that the remedy is the obligation, then the conclusion is equally inevitable, that any law which delays or postpones it for a day or an hour, is within the constitutional prohibition. I think it might even be said that the remedy could not be changed, even though the new one was equally efficacious. Because, if the remedy given at the time the contract was entered into, constituted its obligation, then the party is entitled to that remedy, and it is

no answer to say that the state has given him another just as good. Test it by an illustration, where there is no room for question that the law reaches the obligation of the contract. Suppose a contract to deliver corn; could the state release the party from that obligation, by providing that he might deliver wheat? Clearly not. It would be no answer to say that the wheat was just as valuable as the corn, or even more so. However valuable it might be, it was not the contract. Suppose a contract by which a lien is created on certain articles, and a power given to sell a part of them on default. Could the state by law deprive the party of the power to sell that part, by giving him an authority to sell the other part, even though more valuable, or by giving him any other, even superior remedy? Clearly not. All must admit in these cases where there is no doubt that the contract is affected, that any change of it is beyond the power of the legislature. And I say again, however doubtful it may be that laws acting on the remedy do affect the obligation; yet, when it is once established that the remedy constitutes the obligation, it would seem to follow, by the same necessity, that the remedy cannot be changed. Any change of the obligation impairs the obligation. Because, though a new obligation, equally beneficial, should be created, yet the old one, which was the obligation of the contract, would to the extent of the change, be impaired or destroyed. It follows, therefore, if the remedy is the obligation, that it cannot be impaired in the slightest degree or changed, without violating the constitutional provision.

But, on the other hand, if the remedy does not constitute the obligation of the contract, it follows that it remains under the control of state legislation, and that even if it should be destroyed entirely, it would not be a violation of the constitution.

But what is the rule in *Bronson vs. Kinzie?* It takes

neither the one position nor the other. It neither says that the remedy is the obligation, and therefore it cannot be impaired, nor that it is not the obligation, and therefore may be impaired. What it concedes can only be sustained on the assumption that the remedy does not constitute the obligation; what it refuses to concede can only be sustained on the assumption that it does.

The court says: " If the laws of the state passed afterwards had done nothing more than *change the remedy* upon contracts of this description, they would be liable to no constitutional objection. For, undoubtedly, a state may regulate at pleasure, the modes of proceeding in its courts in relation to past contracts as well as future." Now, how is it possible to sustain this statement, except on the theory that the remedy does not constitute the obligation? It can be done upon no other. For if it does constitute the obligation, if " the modes of proceeding in courts," which are in force when contracts are made, constitute their obligation, then the language just quoted would be equivalent to saying, that the states might change the obligation of contracts without being liable to any constitutional objection, that they might, at their pleasure, " regulate" the obligation of " past contracts, as well as future."

But the court proceeds to say : " It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity." This amounts to an express admission that the remedy

Von Baumbach vs. Bade.

does not constitute the obligation of the contract. And a case may well be supposed where, under an exercise of the power here conceded to the states, all effectual remedy may be lost on certain contracts. Suppose an indebtedness incurred, while by the law the "tools of the mechanic," or the "necessary implements of agriculture," or the articles of household furniture," were not exempt. The state then passes a law by which they are exempted. They might constitute the only property of the debtor, and thus the creditor would have no effectual remedy left upon his contract. Yet the court concedes such legislation to be within the power of the states. This concession can only be supported on the ground that the remedy is no part of the contract. For if it were, then its obligation would be clearly impaired by such legislation. And the motives of humanity and policy alluded to by the court, would furnish no justification for it ; for the states are not at liberty to impair the obligation of contracts, no matter how strong the motives of humanity and policy, which may call for such legislation.

But the court continues: "And although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional." This again can only be sustained upon the theory that the remedy is not the obligation. If it were, it manifestly could not be rendered "more tardy and difficult," without being impaired. It is true, the court limits this concession by the words "*in some degree.*" But can it be for a moment contended that this is a question of degree; that the states may impair the obligation of contracts in some degree, though not to an unlimited extent? This will hardly be pretended.

The court then proceeds: "Whatever belongs merely to the remedy may be altered according to the will of the state, *provided the alteration does not impair the obligation of the*

*contract.*" I confess it seems to me impossible to reconcile this provision with the concessions previously made. Those concessions must be held to admit that the remedy is not the obligation; the proviso assumes that laws affecting the remedy may impair the obligation. The two propositions seem to me repugnant to each other, and there is nothing in the opinion that explains the difficulty. This rule therefore, while conceding to the states the power to legislate upon and alter remedies, and make them more tardy and difficult, which can only be maintained upon the theory that those remedies do not form the obligation, yet stops short of the conclusion to which the concession logically tends, and reserves to the judicial power a discretion to revise such legislation and confine it within what the judiciary may deem reasonable and proper bounds.

I confess this has always seemed to me an extraordinary position, that the judiciary has the power to control the state legislatures as to matters admitted to be proper subjects of their legislation. Undoubtedly they may always limit such legislation by constitutional restrictions. But the substance of the position here assumed, seems to me to be this, that the remedy is under the control of the state; and, so long as its legislation only alters or impairs it, to what the judiciary deems a reasonable extent, then it is not within the constitutional prohibition; but when it does so to an unreasonable extent, then it is. And this is after all but a judicial discretion to revise legislation; and in my judgment, there is no authority for it in the constitution. It is engrafting upon that instrument a provision it does not contain, and makes it say not only that the states shall not pass laws impairing the obligation of contracts, but also that they shall continue in force reasonable remedies to which parties may resort in case the contracts are violated.

The rule here established seems to be a halting between

two opinions, one or the other of which must be correct, while no middle ground is tenable. Either the remedy forms a part of the obligation of the contract, or it does not. If it does, then it is beyond the reach of state legislation. If it does not, then it is entirely under the control of the state. And I think this view is supported by the two cases of *Bronson vs. Kinzie,* and *McCracken vs. Hayward,* taken together. For the opinion of the court in the latter case contains the following clause: " The same power in a state legislature *may be carried to any extent if it exists at all ;* it may prohibit a sale for less than the whole appraised value, or for three-fourths, or nine-tenths, as well as for two-thirds ; for if the power can be exercised to any extent, its exercise must be a matter of uncontrollable discretion in passing laws relating to the remedy which are regardless of the right of the plaintiff." It seems a little remarkable that this should in the next sentence be declared to have been " the ruling principle in *Bronson vs. Kinzie,"* when in that case, the court expressly conceded to the states the power to pass laws that should, " in some degree," render the remedy " more tardy and difficult." We have then *Bronson vs. Kinzie* holding that the states have the power to alter the remedy, and *McCracken vs. Hayward* saying that " if the power exists at all," it may be " carried to any extent." We have the former case holding that the states may exercise the power to some extent," so as to render the remedy " more tardy and difficult ;" the latter, that if it may be exercised to any extent, " its exercise must be a matter of uncontrollable discretion." The former was right in its concessions, the latter in its conclusions from those concessions.

I shall not enter into any lengthy examination of the question, whether the remedy constitutes the obligations of a contract. It seems to me clear that it does not. The obligation of the contract is that inherent force, which the contrac

itself has, to require the parties to abide by its provisions. This, state legislation can neither impair nor change. But this is obviously distinct and separate from the obligation of the remedy. The one arises from the contract itself, the other from the law. The one obliges the parties to comply with the terms of the contract, and the other requires them to make compensation for having violated it. The one is created by the parties, and is under their control; the other is created by the sovereign power in pursuance of its views of policy and justice; and it is incompatible with its sovereignty, that parties by contracting under its laws, should have the power to withdraw them from its control, and perpetuate them at pleasure. The obligation of the contract travels with it wherever it goes; that of the remedy is confined to the jurisdiction whose laws furnish it.

But I will not pursue the subject. It is exhausted by the reasoning of Chief Justice Marshall in *Ogden vs. Saunders,* and that of Justice McLean, in his dissenting opinion in *Bronson vs. Kinzie.* And it is worthy of remark, that the latter, in his opinion, points out the unjustifiable use made of the case of *Green vs. Biddle,* 8 Wheat., 17, in the opinion of the majority. The question in that case arose under the compact between Virginia and Kentucky, and the language of the compact was, " that all private rights and interests of land within Kentucky, derived from the laws of Virginia, prior to such separation, shall remain valid and secure under the laws of the proposed state, *and shall be determined by the laws then existing in the state of Virginia."* Here it is very clear that any act depriving parties of the benefit of " the then existing laws of Virginia," would be " a violation of the compact." But it is equally clear that a decision to that effect furnishes no support whatever for the position that a state law impairing the remedies given upon contracts, would impair their obligation, and thus violate the provision of the constitution.

And it may fairly be deemed ground of surprise, that the supreme court of the United States should quote it for that purpose without making any allusion to the important fact, that by the compact the benefit of the existing laws of Virginia was expressly preserved.

I think the case of *Morse vs. Gould*, 1 Kern., 281, is also entitled to great weight in determining this question. True, it professes a willingness to abide by the determination of the supreme court of the United States, but at the same time it substantially disregards the doctrine of *McCracken vs. Hayward*, while keeping within that of *Bronson vs. Kinzie*. But upon the real merits of the question, it states the law, and defines the rights of the parties with great clearness. It says: "The right which a creditor, by becoming such, acquires, is to have the use and benefit of the laws for the collection of debts, which may be in force when he shall have occasion to resort to them, to enforce his demand against the debtor." And, again, after alluding to a number of authorities on the point, the court says: "These authorities are exemplifications of the principle that legal remedies are in the fullest sense under rightful control of the legislatures of the several states, notwithstanding the provision in the federal constitution, securing the inviolability of contracts; and that it is not a valid objection to legislation on that subject, that the substituted remedy is less beneficial to the creditors than the one which obtained at the time the debt was contracted. That this principle is a sound one, I cannot entertain the slightest doubt." The doctrine here stated settles, by logical necessity, the whole question ; for, if the states may make the remedy "less beneficial," the reasoning which establishes that right must also sustain the power to destroy it entirely, for if the remedy constitutes the obligation of the contract, an act making it "less beneficial," just as clearly impairs that obligation as one which abolishes all remedy. The man who

robs me of a dollar, just as clearly robs me, as he who robs me of a thousand.

I agree therefore with this case, with *Bronson vs. Kenzie,* and the multitude of others that might be cited, which show that the obligation of the contract and the remedy are entirely separate and distinct; and that the states may rightfully legislate upon the remedy, change it, and render it less beneficial, " in respect to past contracts as well as future." I agree with *McCracken vs. Hayward,* that " if the power may be exercised to any extent, its exercise must be a matter of uncontrollable discretion."

I know it is asked of what benefit is the prohibition against imparing the obligation of contracts, if the states by abolishing the remedy may as effectually defeat the rights of parties? But the answer to this is that the constitutional prohibition extends only to legislation that impairs the obligation of contracts; without attempting to place any restriction upon the power of the states, with respect to other legislation that might have an equally disastrous effect upon the rights of parties, and courts have no authority to extend it to such other legislation, upon the plea that it might have such effect. They are to interpret and not make a constitution. Chief Justice Marshall, in *Ogden vs. Saunders,* in answer to this same objection says: " Our country exhibits the extraordinary spectacle of distinct and, in many respects, independent governments, over the same territory and same people. The local governments are restrained from imparing the obligation of contracts, but they furnish the remedy to enforce them, and administer that remedy in tribunals constituted by themselves. It has been shown that the obligation is distinct from the remedy, and it would seem to follow that law might act on the remedy without acting on the obligation. To afford a remedy is certainly the high duty of those who govern, to those who are governed. A failure in the performance

of this duty subjects the government to the just reproach of the world. But the constitution has not undertaken to enforce its performance. That instrument treats the states with the respect which is due to intelligent beings, understanding their duties and willing to perform them; not as insane beings, who must be compelled to act for self preservation. Its language is the language of restraint, not of coercion. It prohibits states from passing any law imparing the obligation of contracts; it does not enjoin them to enforce contracts. Should a state be sufficiently insane to shut up or abolish its courts, and thereby withhold all remedy, would this annihilation of remedy annihilate the obligation also of contracts? We know it would not," &c.

I have thus stated, without the time to do so in the manner I could have wished, my reasons for holding the act in question, as a mere regulation of the remedy, to be within the undoubted power of the state, and liable to no constitutional objection. If compelled to decide it upon the authority of the supreme court of the United States, I think it could be sustained within the doctrine of *Bronson vs. Kinzie,* but have great doubt whether it could be within that of *McCracken vs. Hayward.* The latter case seems to me to retract the concessions of the former, and to establish the principle that the remedies given by law at the time the contracts are entered into, constitute a part of them just as much as though they were inserted as express stipulations in the contracts themselves; and that therefore the states cannot change or modify them at all. I think the premises are untrue; but that, if true, the conclusion necessarily follows, and the position seems much more logical and consistent, than that which, while admitting that the remedy is separate and distinct from the contract, and subject to be altered, modified and impaired, " in some degree," by state legislation; yet attempts to limit that legislation, by judicial discretion.

Von Baumbach vs. Bade.

The court in *Morse vs. Gould,* evidently understood the doctrine of *McCracken vs. Hayward* as in conflict with that of *Bronson vs. Kinzie,* and as excluding any "change" of the remedy; though it passes it with the remark that it was "unnecessary to go that length," and characterizes it as "an unwarrantable restriction upon the powers of the state governments." I also so regard it; and I think this prohibition in the constitution has been stretched to an unjustifiable extent, and made to include legislation it was never intended to reach. The states have been unable to exercise a wholesome dicipline over the powerful corporations they create, to change their laws for raising revenue, or to alter the methods of proceeding in their own courts, without having their action called in question, as being prohibited by this clause of the constitution, and in many instances unwarrantably restricted. And believing, as I do, that the state courts with respect to the supreme court of the United States, are not inferior but co-ordinate, and that the judges of each must decide all questions that come before them, on their own judgment and conscience; and believing, as I do, that the doctrine under review, if carried to its logical results, would withdraw from the states a vast field of legislation, which the constitution has not withdrawn; I have felt it my duty to place on record my dissent from a principle, which would thus subvert so material a portion of that sovereignty, which the states have never surrendered.