### OF THE

# STATE OF WISCONSIN.

19    17
90    21

19    17
102    67

19    17
109    214
e109   217

## SELSBY VS. REDLON.

The declarations of an alleged vendor, made while he was still in possession of the property sold, as to a sale made prior to that under which a party to the action claims, are admissible in evidence against such party where the opposite party claims under an execution against such alleged vendor.

Such declarations of the vendor, although not made until after he has parted with the possession, are admissible on *cross-examination,* to contradict the testimony given by him as a witness on his direct examination.

The docket of a justice of the peace may be put in evidence to prove the rendition of a judgment under which one of the parties to an action claims, without prior oral proof that it contains a record of such judgment.

A judgment was rendered by a justice of the peace in February, 1859, and execution issued and levied in October, 1861. By the statute in force in 1859 (R. S. chap. 120, sec. 175), execution upon a judgment rendered in a justice's court could not issue after two years from its entry. *Held,* that although chap. 140, Laws of 1861, allowing the issue of execution within *five* years after judgment rendered, was probably intended to apply only to courts of record, yet under chap. 286, Laws of 1863, the levy of the execution in this case will be sustained.

The act of 1863 declares that it was the true intent and meaning of the act of 1861, "that the party in whose favor judgment had theretofore been given, or should thereafter be rendered in *any* court in this state, whether a court of record or a court held by any justice of the peace, might proceed to enforce the same by execution at any time within five years from the entry of judgment." The second section amends sec. 175, chap. 120, R. S., so as to read as follows: "Upon every judgment rendered by a justice, execution shall be issued by such justice, or his successor in office   *   *   *   at any time, upon demand, within five years from the rendition of such judgment." *Held,*

1. That this was equivalent to an enactment that all executions upon judgments of

VOL. XIX.—2

justices of the peace theretofore issued after the expiration of two but before the lapse of five years, should be deemed valid and regular.

2. That it was competent for the legislature so to enact, and the act operated at once upon all such executions the invalidity of which had not already been adjudged by some competent court. So held in a case where the validity of the judgment and the obligation of the judgment debtor were not denied.

APPEAL from the Circuit Court for *Waushara* County.

Replevin for a colt, brought by *John W. Selsby.* The defendant claimed as purchaser at a sheriff's sale, in November, 1861, under an execution against the property of James K. Selsby, plaintiff's father. The plaintiff's evidence tended to show that he bought the colt of his father Sept. 27, 1861, and enlisted in the military service of the United States on the next day ; that he had been living with his father up to that time ; that the father, by his request, was to keep the colt while he was absent in the army, and did keep it until the levy of the execution, about a month after the plaintiff's purchase. The father was examined as a witness for plaintiff, and testified that he sold the colt to him on said 27th of September, 1861. On cross-examination he said that the colt was taken from his possession by one Youngman [the constable who levied the execution], and that the defendant was with him at the time. Plaintiff objected to the witness giving in evidence " any statements made by him subsequent to the sale and transfer of the property to the plaintiff, showing or tending to show a prior sale." The objection was overruled, and witness testified : " I did *not* tell Youngman at that time that I sold the colt to *John* last spring. I was at Judge Walker's house in 1861 : I did *not* then and there state to him that I had sold the colt to plaintiff the then last spring." The defendant offered in evidence the docket of one Justice Joslin, to prove the judgment against James K. Selsby, under which he claimed ; but the plaintiff objected on the ground that " there was no evidence before the court showing that [said docket] contained an entry" of such a judgment. The objection was overruled and the record of said judgment read in evidence, showing

that the same was rendered February 11, 1859. The introduction in evidence of the execution upon such judgment, dated October 25, 1861, was objected to on the ground that having been issued more than two years after the rendition of the judgment, it was void. Objection overruled. Youngman, for the defendant, testified that at the time he levied said execution, James K. Selsby told him he had sold the colt to plaintiff the previous *spring*. Thomas H. Walker, for the defendant, testified: "James K. Selsby was at my house the latter part of August, 1861. At that time he told me he had sold the colt to plaintiff in the spring of 1861." The record does not show any objection to the admission of this evidence.

Verdict and judgment for the defendant; and the plaintiff appealed.

*L. L. Soule & J. C. Truesdell*, for appellant. [No brief on file.]
*S. U. Pinney*, for respondent.

*By the Court*, DIXON C. J. It is possible that the declarations of the witness James K. Selsby were admissible on the ground that he was a vendor in possession of the property sold at the time they were made, but enough does not appear in the bill of exceptions to authorize us to so decide. It appears that the colt remained in his possession after the alleged sale to the plaintiff, but whether it was in his possession at the time the declarations were made does not distinctly appear. To warrant their admission on this ground, it should be clearly shown that he was in possession when the declarations were made. *Grant v. Lewis*, 14 Wis., 487. But though the declarations ought to have been rejected on this ground, still we think they were admissible on another. The witness was upon his cross-examination, and the questions put, if answered in the affirmative, or affirmatively proved by other witnesses, tended directly to contradict his testimony given on the examination in chief. It was a legitimate method of discrediting the witness. Starkie on Ev., 238.

The objection to the docket of justice Joslin seems quite unfounded. Whether it contained the entry of the judgment set up in the answer of the defendant was a fact to be ascertained by inspection of the docket after its introduction, and not one to be proved by oral evidence before the docket should be introduced.

At first we were inclined to the opinion that the question whether the execution was void or only voidable, was governed by the case of *Mariner v. Coon,* 16 Wis., 465 ; but upon further examination we are of opinion that it is not, and that the cases are essentially different.

In courts of record executions might lawfully issue after the expiration of two years from the rendition of the judgments, upon leave of the court. If issued without such leave they were irregular but not void. The authority to issue them existed. But in justices' courts this was not so. Prior to the act of April 1, 1861, Laws of 1861, c. 140, and the act of April 13, 1863, Laws of 1863, c. 286, a justice of the peace had no power to issue an execution after the lapse of two years from the rendition of the judgment. R. S., c. 120, sec. 175. If he did so, it was void for want of authority. The justice's judgment in this case was rendered February 11th, 1859. The execution was issued October 25th, 1861. Under the Revised Statutes, therefore, it would have been void ; and the question is, whether it was aided and the defect cured by the two special acts above referred to. I think that it was, and that it is now to be deemed in all respects as a valid execution. The first section of the act of April 1, 1861, is broad enough to include justices' judgments. " The party in whose favor judgment has been heretofore or shall hereafter be given, may, at any time within five years after the entry of judgment, proceed to enforce the same as provided in this act." But the second section seems applicable only to judgments in the courts of record. The third section repeals sections one and two of chapter 134, R. S. The act is entitled " An act to amend chapter 134 of the

Revised Statutes, entitled, *of executions and proceedings supplementary thereto.*" Chapter 134 of the Revised Statutes obviously applies to executions and proceedings in courts of record, and not to courts of justices of the peace. It is very doubtful, therefore, whether this act as originally passed has any influence upon the question. But section one of the act of April 13, 1863, is in these words : "It was the true intent and meaning of chapter 140 of the general laws of 1861, relating to judgments and executions, that the party in whose favor judgment had theretofore been given, or should thereafter be rendered (see Note, p. 504, Laws of 1863) in any court in this state, whether a court of record or a court held by any justice of the peace, might proceed to enforce the same, by execution, at any time within five years from the entry of judgment, in the manner prescribed by law." The second section amends section 175 of chapter 120 of the Revised Statutes so as to make executions upon justices' judgments issuable at any time within five years after the judgments are rendered. Conceding then that the act of April 1, 1861, was before inapplicable to such judgments, it becomes a question of the retroactive power of the legislature. Was it competent for the legislature, so far as the time of issuing was concerned, to enact that all executions upon judgments of justices of the peace theretofore issued after the expiration of two but before the lapse of five years from the time the judgments were rendered, should be deemed valid and regular ? It seems to me that it was, and that the act operated at once upon all such executions the invalidity of which had not already been adjudged by some competent court of law or equity. I had occasion to examine the question, and some of the leading authorities upon it, in *Hasbrouck v. Milwaukee*, 13 Wis., 50, and deem it unnecessary to add to what is there said. It appears to me, in the language of Chancellor KENT, to be one of those remedial statutes, not impairing contracts, or disturbing absolute vested rights, but going only to confirm rights already existing and in further-

ance of the remedy, by curing defects and adding to the means of enforcing existing obligations, the constitutionality of which has always been upheld. The validity of the judgment is not questioned, and the obligation of the debtor to pay not denied. After the execution was issued and the judgment satisfied, the question was, whether such satisfaction should stand and the creditor retain that which in justice and equity belonged to him, or whether he should make restoration to his debtor and be put to a new action to recover the debt. I think an act to relieve creditors in such cases to be not only just and reasonable, but that it is liable to no constitutional objection.

Judgment affirmed.