Hall and others vs. Banks and others.

HALL and others, Appellants, vs. BANKS and others, imp., Respondents.

*February 25 — March 17, 1891.*

*Constitutional law: Mechanics' liens.*

1. Ch. 333, Laws of 1889, which repeals the provisions of the then existing lien laws restricting the liability of owners of buildings to subcontractors furnishing labor or materials therefor to the contract price, and makes them absolutely liable to such subcontract-

ors, who comply with its requirements, for the amount of their claims, regardless of the contract price or the amount due to the principal contractor when they gave notice of their claims, cannot be construed as retrospective, and does not govern the rights of subcontractors under a contract entered into before that act took effect, though it became in force before the owner had incurred any liability to them. To give it that effect would render it unconstitutional, as changing and impairing the obligation of the contract.

2. The assignment by the principal contractor of all his claim against the owner under such a contract, made in good faith and before any of the subcontractors had served notice of their claims, operated to defeat their liens, even though the owner may have known that their claims were unpaid at the time of paying to the assignees.

3. The rights of such subcontractors were in no way enlarged or affected by the fact that both the contractor and his assignees gave to the owner bonds to indemnify him against their claims.

4. It is no evidence of bad faith on the part of such owner toward the subcontractors, that he refused to pay the balance due the principal contractor to the sureties in his bond, on their promise to pay off the subcontractors claiming liens, and litigate the claim of those to whom the assignment was made, and to indemnify him against the latter, where it does not appear that such contractor assented thereto.

APPEAL from the Circuit Court for *Douglas* County.

This is an action to enforce liens upon certain lots in the city of Superior for the price of labor performed and materials furnished by the plaintiffs as subcontractors in the erection of certain buildings upon said lots.

The lots were held by the defendants *W. B.* and *J. L. Banks* under a contract for the purchase of the same and other lots of the defendant, the *Land & River Improvement Company*, which holds the legal title thereto. On March 28, 1889, the *Banks* entered into a contract with the defendant Maynard, in and by which Maynard agreed to erect on the lots so purchased by the *Banks* twenty-five frame dwellings, according to certain plans and specifications, and to furnish the material therefor. Three of said dwellings were to be erected upon the lots upon which the liens are claimed.

The work was to be completed August 1, 1889. The *Banks* were to pay Maynard therefor $16,825, of which eighty per cent. was to be paid on estimates as the work progressed, and the remaining twenty per cent. when the work should be completed, and proof furnished that there were no liens against the lots for work and materials. On April 18, 1889, Maynard executed to the *Banks* a bond with sureties, indemnifying the latter from loss suffered by reason of the failure of Maynard to perform the agreement on his part, and particularly against liens of subcontractors.

Maynard abandoned the work early in August, but at that time the buildings were so nearly completed that the *Banks* completed the same at an expense of about $100. When the buildings were thus completed, the *Banks* had paid Maynard (including the cost of completing them after Maynard abandoned the work) $12,857.30, leaving an unpaid balance due Maynard of $3,967.70.

The plaintiffs were subcontractors under contracts with Maynard, and furnished materials used in the erection of the three buildings above mentioned, and performed labor for him on such buildings. Their claims therefor aggregate something over $350. This action is to enforce liens for such claims. Other subcontractors filed petitions for liens on the remainder of the twenty-five buildings and the lots upon which they were erected. These claims aggregate over $2,200. Maynard was also indebted to Edwards & McCulloch Lumber Company about $4,000 for materials used in the buildings. That company did not institute lien proceedings.

August 3, 1889, Maynard assigned the unpaid balance of the contract price for the buildings to Edwards & McCulloch Company, and on August 7th that company gave due notice of such assignment to the *Banks*. When such notice was given, no notice of any claim for a lien had been served upon the *Banks* or the *Land & River Improvement Com-*

*pany.* The *Banks* afterwards paid such balance to the Edwards & McCulloch Company. Before such payment was made the latter company gave the *Banks* a bond indemnifying them against liens of subcontractors. When the payment was made, the *Banks* knew that the claims here in suit existed and were unpaid. The facts above stated appear from the complaint, the answer of the *Banks,* a stipulation of facts, the testimony given on the trial, and the findings of fact by the court. The conclusions of law are, in substance, that when notices of the lien claims of the plaintiffs were served on the *Banks* they were not indebted to Maynard; that the contract between the *Banks* and Maynard is governed by the statutes as they existed prior to the enactment of ch. 333, Laws of 1889, and hence that plaintiffs were not entitled to the liens claimed, but were only entitled to personal judgments against Maynard for the amount of their respective claims. Judgment was thereupon entered, dismissing the action as to the *Banks* and the *Land & River Improvement Company,* with costs. The plaintiffs appeal from such judgment.

For the appellants there was a brief by *Reed, Grace & Rock,* and oral argument by *Myron Reed.* They contended that the rights of the subcontractors are fixed by ch. 333, Laws of 1889, and their notices given in compliance therewith, and were not cut off by payment to the assignees of the contractor. *White v. Miller,* 18 Pa. St. 54; *Laird v. Noonan,* 32 Minn. 558; *Colter v. Frese,* 45 Ind. 103; *Ward v. Kelly,* 7 Mo. App. 565. Especially when the owner knew or might have known of their rights to liens. Jones, Liens, sec. 1290; *Andrews v. Burdick,* 62 Iowa, 714; *Winter v. Hudson,* 54 id. 336; *Othmer v. Clifton,* 69 id. 656; *Lucas Co. v. Roberts,* 49 id. 159; *Havighorst v. Lindberg,* 67 Ill. 463; *Gilchrist v. Anderson,* 59 Iowa, 274; *Martin v. Morgan,* 64 id. 270; *Fay v. Orison,* 60 id. 136; *Cutler v. McCormick,* 48 id. 406; *Brooks v. Railway Co.* 101 U. S. 443;

*Chicago L. Co. v. Woodside,* 71 Iowa, 359. The facts in respect to the assignment show it to have been made in bad faith and in fraud of the rights of the subcontractors. The act of 1889 is constitutional, and applies to this case, as the claims of the subcontractors all originated after that act went into effect. Jones, Liens, sec. 1304; *Bohn v. McCarthy,* 29 Minn. 23; *O'Neil v. St. Olaf School,* 26 id. 329; *Parker v. Bell,* 7 Gray, 429. The change in the lien law did not impair the obligation of the contract between the parties, but merely provided a new and more efficacious remedy. Cooley, Const. Lim. 345; *McCracken v. Hayward,* 2 How. 612; *Doe v. Monson,* 33 Me. 432; *Colpetzer v. Trinity Church,* 24 Neb. 113; *Von Baumbach v. Bade,* 9 Wis. 559; *Shepard v. Steele,* 43 N. Y. 52; *Atwood v. Williams,* 40 Me. 409.

For the respondents there was a brief by *Ross, Dwyer & Smith,* and *F. W. Downer, Jr.,* and oral argument by *Frank A. Ross.*

LYON, J. The lien laws as they existed before the enactment of ch. 333, Laws of 1889, contained the provision that in actions by subcontractors to enforce liens upon premises and buildings "in no case shall the owner be compelled to pay a greater sum for or on account of such house, building, or other improvement than the price or sum stipulated in the original contract or agreement," with the proviso that if the contract price is fixed unreasonably low, with intent to defraud subcontractors, the basis of the owner's liability shall be a fair price for the labor and material used in the building, instead of the contract price. R. S. sec. 3315, as amended by ch. 312, Laws of 1885, and ch. 535, Laws of 1887. Such was the law until April 12, 1889, when ch. 333 of that year went into effect. That chapter repeals the above restriction upon the liability of the owner, and makes him absolutely liable to subcon-

tractors who comply with the requirements thereof for the amount of their claims, without regard to the contract price of the buildings, or the sum the owner may be indebted to the contractor when notice of the subcontractor's claim for a lien is served, or at any other time.

The contract between the *Banks* and Maynard for the erection of the buildings in question was made March 28, 1889. Ch. 333, Laws of 1889, took effect by publication thereof April 12, 1889. Hence ch. 333 was not in force when such contract was made. It was in force, however, before Maynard incurred any liability to either of the plaintiffs. The vital question in the case is, Does ch. 333 reach back and charge the *Banks* (and through them the Improvement company) with the absolute liability to subcontractors imposed upon the owner by that chapter. The learned counsel for plaintiffs maintain with much ingenuity of argument that ch. 333 affects only the remedy, and is therefore applicable to contracts made before its enactment. We cannot adopt this view. An essential and most vital element in the contract of March 28th is the price the *Banks* agreed to pay Maynard for erecting the buildings. Any legislation which may compel them to pay more than they agreed to pay necessarily reaches the contract, and impairs its obligation. Had all the subcontractors to whom Maynard was indebted for labor and materials successfully enforced liens on the twenty-five dwellings for their claims, the *Banks* would have been compelled to pay more than $2,000 for the erection thereof, over and above what their contract with Maynard required them to pay. It is no sufficient answer to this to say that the *Banks* might have protected themselves by withholding more money from Maynard with which to pay the claims of subcontractors, for, had they done so, it is fair to presume the aggregate claims of subcontractors would have been increased by an amount equal to that thus withheld. Moreover, if in any

case the claims of subcontractors exceed the contract price of the building (which is by no means an uncommon circumstance), the owner, in order to save his property, might be compelled to pay more than the contract price for the building, although he pays nothing to the original contractor. That a law leading to such results would necessarily impair the obligation of contracts, seems perfectly clear. In none of the numerous cases cited by counsel for plaintiffs on this subject do we find it held that a statute which may require a party to a contract in any contingency to pay more or accept less than the considerations specified therein can operate retrospectively, and thus change a vital provision in the contract, entered into before the enactment of the statute, to the injury and loss of a party to such contract. The law is well settled to the contrary. Cooley, Const. Lim. (6th ed.), 344, 347, and cases; 3 Am. & Eng. Enc. Law, 751, and cases cited in note, entitled "Law changing terms of contracts."

Another satisfactory reason for holding ch. 333, Laws of 1889, not retroactive is that it contains no language showing a legislative intent that its provisions should extend to contracts existing when the statute was enacted. The rule of construction is that " a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Cooley, Const. Lim. 455, and cases.

For the reasons above stated it must be held that the right of the plaintiffs to the liens claimed is governed by the statute in force when the contract between the *Banks* and Maynard was entered into, and hence is not affected by the enactment of ch. 333, Laws of 1889.

The assignment by Maynard to Edwards & McCulloch Company of the balance due him from the *Banks* on their contract operates to defeat the liens claimed by plaintiffs, for none of them had at that time instituted any lien pro-

Hall and others vs. Banks and others.

ceedings. It was said by Mr. Justice TAYLOR in *Dorestan v. Krieg*, 66 Wis. 604, that the lien of a subcontractor "is defeated by an assignment of the claim due from the owner to the original contractor, made in good faith, before the notice is served." Such is undoubtedly the law.

There is nothing in the present case to impeach the good faith of Maynard in making such assignment, or of the *Banks* in paying to the assignee the balance due Maynard. True, Maynard knew such assignment preferred the Edwards & McCulloch Company, and defeated the plaintiffs' right to liens for their claims, but that was a legal mode of giving a preference to one creditor over others. It is immaterial that the *Banks* knew when they paid the Edwards & McCulloch Company that the plaintiffs held unpaid claims as subcontractors. The assignment by Maynard defeated those claims, and the *Banks* had no alternative but to pay over the balance due Maynard to the assignee thereof.

It was claimed in argument that the rights of the subcontractors were in some manner enlarged or affected by the fact that on April 18, 1889, Maynard gave the *Banks* a bond with sureties, conditioned, among other things, to indemnify them against the claims of subcontractors; and that before the *Banks* paid over to Edwards & McCullough Company the balance due Maynard that company gave them a bond to indemnify them against claims of subcontractors which they might be compelled to pay. Both these bonds are merely obligations of indemnity to the respective obligees therein, and it is not perceived how they can affect the *Banks*, or increase their liability under their contract with Maynard. Without the first bond the *Banks* were bound by the contract of March 28th, and without the other they were bound to pay over the balance due Maynard to his assignee. So far as this record shows, both bonds were entirely voluntary, and it is quite impossible to say that they operate to create liens, the right to which does not otherwise exist.

Only a single additional fact in the case requires notice. Before Maynard assigned to Edwards & McCullough Company, his sureties in the bond of April 18th offered the *Banks*, if they would pay such sureties the balance due Maynard, they would pay off all subcontractors claiming liens, and would litigate the claim of Edwards & McCullough Company, and indemnify the *Banks* against it. This proposition was not accepted, and its non-acceptance is urged as evidence of bad faith towards the lien claimants on the part of the *Banks*. A complete answer to this is that the *Banks* had no right to accept such proposition without the consent of Maynard, and it does not appear that such consent was obtained. Besides, the refusal to accept the offer is no more evidence of bad faith towards the lien claimants than its acceptance would have been evidence of bad faith towards Edwards & McCullough Company. It was competent for Maynard to assign the balance due him from the *Banks* to the plaintiffs, or any or all of the lien claimants, but he did not elect to do so. The *Banks* are not responsible for his action or non-action in the premises; hence the offer by the sureties to the *Banks* has no significance in the case.

*By the Court.*— The judgment of the circuit court must be affirmed.