208        SUPREME COURT OF WISCONSIN.        [109

The Oshkosh Water Works Co. vs. City of Oshkosh.

THE OSHKOSH WATER WORKS COMPANY, Appellant, vs. CITY
OF OSHKOSH, Respondent.

*January 12 — February 26, 1901.*

*Constitutional law: Impairing obligation of contract: Claims against
city: Change in remedy: Performance of duty by officers.*

1. A law does not impair the obligation of a contract, within the
   meaning of sec. 12, art. I, Const., if neither party is relieved thereby
   from performing anything of that which he obligated himself to do;
   but if either is absolved from performing any of those things such
   obligation is impaired, whether the absolution is accomplished
   directly and expressly or indirectly and only as a result of some
   modifications of the legal proceedings for enforcement.
2. It is not an impairment of the obligation of a contract to make the
   remedy dependent for certain steps upon the performance by pub-
   lic officers of their duties.
3. Except that its charter provided that moneys should be drawn out
   only upon the order of the mayor and clerk, duly authorized by
   the council, and that the council might require any claim to be
   verified by affidavit, a city, at the time a contract was made with
   it, was subject to suits upon contract liability like any other per-
   son or corporation. A subsequent amendment of the charter,
   adopted in good faith and with no legislative purpose to defeat or
   embarrass the collection of just claims, providing that no action
   should be maintained upon any claim or demand until after it had
   been presented to and disallowed in whole or in part by the coun-
   cil (failure to pass upon a claim within sixty days being deemed a
   disallowance thereof), and that a disallowance should be a bar to
   any action unless an appeal therefrom was taken within twenty
   days, is *held* not to impair the obligation of the contract although
   it involved a change in the remedy in the following particulars:
   (1) service of notice of appeal was to be made upon the clerk in
   lieu of service of summons upon the mayor; (2) the various steps
   preliminary to getting the matter into court became jurisdictional
   and could not be waived or jurisdiction conferred by the city
   officers; (3) a failure to obtain judgment by reason of errors in
   procedure or lack of proof, which before would have resulted only
   in nonsuit, would leave the claimant barred of his claim; (4) a sus-
   pension of the right to sue, resulting incidentally from the require-
   ment as to presentation and disallowance of claims; (5) the claimant

on appealing was required to give a bond for costs which must be approved by the city attorney and comptroller, and which could not be amended, so that a mistake therein would be fatal to the cause of action. BARDEEN, J., dissents.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Affirmed.*

This is an appeal by the plaintiff from judgment dismissing its complaint, entered on sustaining a demurrer thereto. The complaint alleged the making of a contract between the plaintiff and the defendant on June 18, 1883, for payment to the plaintiff, quarterly, of a certain sum as compensation for supplying the water to hydrants for fire and other city purposes; the construction of waterworks by the plaintiff, in compliance with that contract, on or before October 1, 1884; and the refusal of the city, on demand, to pay the hydrant rental, amounting to $4,085, earned under such contract for the quarter ending October 1, 1898; also the making of a subsequent contract on August 31st for payment of hydrant rentals on certain extensions, the performance thereof by the plaintiff, and refusal by defendant to pay the hydrant rental earned thereunder for the same quarter, amounting to $1,060. The demurrer was on three grounds: first, want of jurisdiction of the person or of the subject of the action; second, that plaintiff has not legal capacity to sue; and, third, that the complaint fails to state facts sufficient to constitute a cause of action.

For the appellant there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper.*

*John F. Kluwin*, for the respondent.

DODGE, J.    The only assignment of error argued by appellant is that the court erred in holding that the charter of the city of *Oshkosh* (ch. 59, Laws of 1891) did not, so far as it relates to the contract of June 18, 1883, impair the obligation of the contract.    It is contended that said char-

ter does so impair, and therefore contravenes sec. 12, art. I, of the constitution of Wisconsin, which provides: "No bill of attainder, *ex post facto* law, nor any law impairing the obligation of contracts shall ever be passed."

At the time of making the contract of June 18, 1883, the city of *Oshkosh* existed and operated under a charter known as ch. 183, Laws of 1883, the first section of which constituted it "a municipal corporation by the name of the city of *Oshkosh*, and by that name capable of suing and being sued in all courts of law and equity." That charter (sec. 1, subch. VII) provided that moneys "shall be drawn out only upon the order of the mayor and city clerk, duly authorized by vote of the common council;" and by sec. 10, subch. VII, "any account or demand against the city, before acted upon or paid, the council may require the same to be verified by affidavit, except salaries and amounts previously fixed or determined by law." Except for these restrictions upon the payment of money, the city of *Oshkosh* was subject to suits upon contract liability like any other person or corporation.

In 1891 was enacted a revised charter (ch. 59, Laws of 1891), continuing substantially the provisions formerly existing in the first section and in secs. 1 and 10, subch. VII. That charter, however, contained a subchapter XXI. It provided:

"Sec. 4. No action shall be maintained by any person against the city upon any claim or demand until such person first shall have presented his claim or demand to the common council for allowance, and the same shall have been disallowed in whole or in part; provided, that the failure of such common council to pass upon such claim within sixty days after the presentation of such claim shall be deemed a disallowance thereof.

"Sec. 5. The determination of the common council disallowing in whole or in part any claim shall be final and conclusive, and a bar to any action in any court founded on such claim, unless an appeal shall be taken from the decision of such common council as in this act provided."

Sec. 6 provided for the appeal in case of disallowance in whole or in part, to be accomplished by serving a written notice of the appeal on the city clerk within twenty days after the disallowance of the claim, and by executing a bond to the city in the sum of $150, with two sureties to be approved by the city attorney and comptroller, conditioned for the faithful prosecution of the appeal and payment of costs; whereupon the clerk is required to transmit the decision and a brief statement of the proceedings and all papers to the clerk of the circuit court of the county, where "such case shall be entered, tried, and determined in the same manner as cases originally commenced in said court," costs to be recovered by plaintiff in case of an increase in the recovery.

This amendment of the charter of *Oshkosh* was but one of many such amendments to city charters occurring at about that time, significant of a marked change of legislative policy with reference to enforcement of money demands against cities. That policy was signified by its adoption in the general city charter promulgated by the legislature of 1889 for cities thereafter to be organized. That policy has been considered by this court in a series of decisions which it is believed have fully recognized and emphasized it. We have held that the preliminary steps are jurisdictional, and that unless complied with the court fails to acquire jurisdiction of the subject matter; that the various steps are mandatory, and cannot be waived by the officers of the city, nor can jurisdiction be conferred by such officers (*Telford v. Ashland*, 100 Wis. 238; *Oshkosh W. W. Co. v. Oshkosh*, 106 Wis. 83); that the bond cannot be amended nor a new bond given after the expiration of the twenty days (*Oshkosh W. W. Co. v. Oshkosh, supra*).

It is, of course, obvious that the amendment of the charter does not expressly and directly affect the obligation of any existing contracts. It is a change of the law regulat-

ing the remedy, and obviously, too, with only that purpose in view. The question, therefore, which is presented before us, is whether, as to claims which have not been allowed by the council (for there is no allegation that this has been allowed), the change in the methods open to a creditor of the city for the adjudication and recovery of such claim is such that, although acting directly only on the remedy, it necessarily impairs the obligation of the contract itself.

We here enter a field redundant of learned discussion, philosophy, and decision, in which, as remarked by Mr. Justice SHIRAS, the very frequency of decision would appear to have rendered it difficult to apply the result of the court's deliberations to new cases, differing somewhat in their facts from those previously considered. *Barnitz v. Beverly*, 163 U. S. 121. Several general propositions are, however, settled so as to require in new cases merely their application. First and most primary among these is that an act which in any degree, no matter how slightly, modifies the obligation of the contract by attempting to relieve the one party from any duty by the contract assumed, is repugnant to the constitutional prohibition. This rule applies to " legislation which affects the contract directly, and not incidentally, or only by consequence." *Von Hoffman v. Quincy*, 4 Wall. 553. Another general rule early established is that over mere remedial procedure the power of the legislature is absolute; that laws regulating it involve so much the consideration of public convenience and welfare that individuals cannot be conceded vested rights therein. For example, it would be intolerable that new laws regulating place or frequency of the sitting of courts could not be enacted and be effective generally, even as to pre-existing rights of individuals, although remotely they affect those rights by adding inconvenience or delay to their enforcement.

It is obvious, however, that rights, whether contractual or other, are so dependent for their value upon the means of enforcing them that for all practical purposes their extinction may be accomplished by laws which, in form, affect only the remedy.  It matters little whether it be enacted that certain debts are extinguished or merely that they shall not be enforceable in any forum.  In either case the legally binding obligation to pay is destroyed.  One of the best actual illustrations of such a result is exhibited by *Cornell v. Hichens*, 11 Wis. 368, where was considered an enactment that in any suit on negotiable bonds and mortgages given to a railway company, although brought by an innocent holder for value, the defendant might answer, alleging misrepresentation in procurement or want of consideration; that such issue should then be tried by a jury; and that, if the jury found such fact to exist, judgment should be entered for the defendant.  That law ostensibly regulated the remedy only, the pleadings and procedure in the course of a suit, but its direct and obvious intention and result was to absolve the defendant from his promise, by law embodied in the negotiable bond, that he would pay the amount to any *bona fide* holder, even though it had been obtained from him by misrepresentation or without consideration,— a result prohibited by the constitution.

In attempted recognition both of the necessity for freedom of general legislation as to remedies and procedure and of the constitutional inviolability of the obligation of contracts, the courts early sought middle ground on which both rights might be protected.  In Wisconsin, the limits of that middle ground have received definition in a multitude of cases, important among which are the following: *Lightfoot v. Cole*, 1 Wis. 26, 33; *Von Baumbach v. Bade*, 9 Wis. 559; *Starkweather v. Hawes*, 10 Wis. 125; *Cornell v. Hichens*, 11 Wis. 368; *Streubel v. M. & M. R. Co.* 12 Wis. 67; *Oatman v. Bond*, 15 Wis. 20; *State ex rel. Soutter v. Common Council*

*of Madison,* 15 Wis. 30; *Paine v. Woodworth,* 15 Wis. 298; *Hasbrouck v. Shipman,* 16 Wis. 296; *Selsby v. Redlon,* 19 Wis. 17; *Nelson v. Rountree,* 23 Wis. 367; *Sydnor v. Palmer,* 32 Wis. 406, 410; *N. W. M. L. Ins. Co. v. Neeves,* 46 Wis. 147; *Lee v. Buckheit,* 49 Wis. 54; *Rosenthal v. Wehe,* 58 Wis. 621; *Hall v. Banks,* 79 Wis. 229; *Second Ward S. Bank v. Schranck,* 97 Wis. 250; *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488; *Eau Claire Nat. Bank v. Macauley,* 101 Wis. 304.

In *Lightfoot v. Cole,* 1 Wis. 26, 34, in discussing a statute which abolished the pre-existing common-law and equitable suits on claims against insolvent estates, and substituted in lieu a presentation and hearing before commissioners appointed by probate court, this court, by CRAWFORD, J., declared: "It was entirely within the control of the legislature to prescribe and modify the remedies which might be pursued in the courts of the territory, and to provide one particular manner of proceeding, to the exclusion of others, *so long as some specific remedy was preserved.* "

The subject received more thorough consideration in *Von Baumbach v. Bade,* 9 Wis. 559, where was presented a law providing that, in suits to foreclose mortgages, defendant should have six months to answer before default, instead of twenty days, and that notice of sale should be published six months, instead of six weeks, as theretofore required. The rule under consideration was there laid down (page 577), by DIXON, C. J., as follows: "It being determined that the remedy, or laws for enforcement of a contract existing at the time it is made, enter into it and form a part of its obligation, it might perhaps be supposed that any repeal, change, or amendment of such remedy, or laws which in any manner delayed or rendered the enforcement of the contract less complete and effectual, would be unconstitutional and void. But such is not the case. All the authorities agree that it is within the power of the, legislature to repeal,

amend, change, or modify the laws governing proceedings
in courts, both as to past and future contracts, so that they
leave the parties a substantial remedy, according to the
course of justice as it existed at the time the contract was
made." The court also adopted the following language
from *Bronson v. Kinzie*, 1 How. 311: "Although a new
remedy may be deemed less convenient than the old one,
and may in some degree render the recovery of debts more
tardy and difficult, yet it will not follow that the law is un-
constitutional. Whatever belongs merely to the remedy
may be altered according to the will of the state, provided
the alteration does not impair the obligation of the contract.
But, if that effect is produced, it is immaterial whether it is
done by acting on the remedy, or directly on the contract
itself. In either case, it is prohibited by the constitution."

This subject received renewed careful attention in the
recent cases of *Second Ward S. Bank v. Schranck*, 97 Wis.
250, and *Peninsular L. & C. Works v. Union O. & P. Co.*
100 Wis. 488, where the rule of *Von Baumbach v. Bade* was
substantially reasserted, it being said in elucidation thereof
by PINNEY, J.: "Any legislation, though acting merely on
the remedy, that substantially impairs or lessens the value
of a contract, is forbidden by the constitution, and therefore
void."

The latest declaration of the rule on this subject by the
supreme court of the United States is found in *McCullough
v. Virginia*, 172 U. S. 102, 124, as follows: "It is equally
well settled that changes in the forms of action and modes
of proceeding do not amount to an impairment of the obli-
gations of a contract, if any adequate and efficacious remedy
be left."

It is conceived that the various forms of expression adopted
are intended to express the same idea, namely, that, if neither
party is relieved from performing anything of that which
he obliged himself to do, the obligations of the contract are

not impaired; but, if he be absolved from performing any of those things, such obligations are impaired, whether the absolution is accomplished directly and expressly, or indirectly and only as a result of some modification of the legal proceedings for enforcement. As the subject is in every case an important one, and as the attempts of different writers and jurists to express the true rule thereon do not entirely agree, and, at best, seem to be capable of different interpretations, it has seemed to me advisable, even at the expense of considerable space, to bring together the concrete instances of application of that rule by this court and by the supreme court of the United States, which is, of course, the ultimate authority. The following are substantially all of the important cases in this court, and the most typical of those in the United States supreme court, which are valuable illustrations under the rule we are now considering:

A statute cutting off all ordinary and common-law proceedings previously existing for enforcement of claims against executors when the estate was insolvent, and prescribing a special remedy by presentation and proof before commissioners of the probate court, and ratable sharing in the assets, *held* within the power of the legislature because some specific remedy was preserved. *Lightfoot v. Cole*, 1 Wis. 26.

An act changing the time for answer and default from twenty days to six months in foreclosure actions, and changing notice of sale from six weeks to six months, *held* not to impair the obligation of pre-existing mortgages. *Von Baumbach v. Bade*, 9 Wis. 559.

The same act *held* applicable to sales under pre-existing judgments, and sustained. *Starkweather v. Hawes*, 10 Wis. 125.

A law giving a laborer for railroad contractors right of recovery against the company, amended after performance of

work so as to take away that right, *held* not to impair the contract of indebtedness between the laborer and his employer, but merely to take away one of two remedies, leaving still an adequate remedy against his debtor. On rehearing, it was concluded that the earlier statute created a contract between the laborer and the railroad company, and the obligation of such contract was by the later act impaired because the only remedy was destroyed. *Streubel v. M. & M. R. Co.* 12 Wis. 67.

Change of procedure in method of acquiring and enforcing log liens not unconstitutional, as applied to existing claims. *Paine v. Woodworth,* 15 Wis. 298.

Statute validating executions under justice of the peace judgments *held* constitutional. *Selsby v. Redlon,* 19 Wis. 17.

A statute enacted after a judgment in ejectment, taking away the pre-existing right, of course, to a motion and order for a new trial, *held* matter of remedy only and valid. *Sydnor v. Palmer,* 32 Wis. 406.

Change of procedure for foreclosure of mortgages, whereby, instead of an immediate personal judgment, to be followed by an immediate sale subject to one year's redemption, there was only permitted a judgment postponing the sale for one year, and allowing a personal judgment only for the deficiency to be ascertained after such sale, *held* to merely regulate the remedy and not impair obligations of the mortgage. *N. W. M. L. Ins. Co. v. Neeves,* 46 Wis. 147.

A statute imposing additional terms on change of venue, *held* goes only to remedy, affects pre-existing actions, and not unconstitutional. *Lee v. Buckheit,* 49 Wis. 54.

Change of practice as to mechanics' lien from law to equity, with substantial alteration as to form of judgment, method of sale, etc. (ch. 143, R. S. 1878), *held* applicable to pre-existing claims. Constitutionality apparently never questioned. *George v. Everhart,* 57 Wis. 397.

Existing law made validity of attachment depend on suffi-

ciency of accompanying affidavit. Subsequent statute permitting attachment to stand on amended affidavit afterwards filed, *held* remedial only, and to apply to pre-existing contracts and suits. *Rosenthal v. Wehe*, 58 Wis. 621.

Abolition of imprisonment for debt *held* no impairment of contract. *Sturges v. Crowninshield*, 4 Wheat. 122; *Penniman's Case*, 103 U. S. 714.

Reasonable additional exemptions from execution do not impair obligation of contract. *Bronson v. Kinzie*, 1 How. 311, and *Edwards v. Kearzey*, 96 U. S. 595, 604 (opinions HUNT and CLIFFORD, JJ.; *contra*, SWAYNE, J.).

Statute changing the law, by requiring that suit on notes owned by banks be brought in the name of the cashier, does not impair the obligation of contracts. *Crawford v. Branch Bank*, 7 How. 279.

· Existing law as to sale of decedent's real estate required it to be at public, open sale, on full notice, and new law authorized a private sale under direction and approval of the court. *Held*, no impairment of existing contracts between estate and its creditors. *Florentine v. Barton*, 2 Wall. 210.

Imposing a notice as a condition of taking out tax deed *held* no impairment of contract embodied in the certificate. *Curtis v. Whitney*, 13 Wall. 68, affirming *Curtis v. Morrow*, 24 Wis. 664.

Where charter of corporation required service of process on its president, a subsequent statute authorizing service on other officers *held* not to impair the contract. *Railroad Co. v. Hecht*, 95 U. S. 168.

Statutes of limitation, provided reasonable time is allowed for commencement of suit. *Terry v. Anderson*, 95 U. S. 628; *Koshkonong v. Burton*, 104 U. S. 668; *Mitchell v. Clark*, 110 U. S. 633; *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301.

Under pre-existing law, state bank bills were made receivable for taxes. Taxpayer could compel receipt by *mandamus*, or have other common-law remedies. New law

prohibited their receipt, and also prohibited any process to compel it, and denied all remedy, except to allow payment under protest after tendering the bank bills, and a suit substantially against the state to recover back; the judgment to be enforceable only by entitling claimant to a comptroller's warrant, payable when funds were in state treasury. *Held* that, an adequate remedy being given, there was no impairment of the obligations of the contract resulting from the cutting off of the former existing remedies. *Tennessee v. Sneed*, 96 U. S. 69; *Antoni v. Greenhow*, 107 U. S. 769; *McCullough v. Virginia*, 172 U. S. 102, 124.

Nor did impairment result from a later statute repealing that above mentioned, whereby the existing remedy of suit against the state was taken away, and common-law remedies revived. *McCullough v. Virginia, supra.*

A statute subsequent to the issue of bonds prohibited *mandamus* or other process against individual officers of a city to enforce judgment, and also prohibited execution, and substituted as the sole remedy a registration of the judgment, accompanied by a duty on the city officers to pay out of first available money. *Held*, adequate remedy for enforcement of pre-existing debts, and not unconstitutional; reserving power of court to compel city to provide money if it failed to do so in the next succeeding tax levy. *Louisiana v. New Orleans*, 102 U. S. 203.

Under pre-existing law of Louisiana, minors, etc., had tacit mortgages on the property of their guardians and tutors. A subsequent act denied validity to such tacit mortgages unless registered, allowing less than a year for registration of existing ones. *Held*, valid for the reason that it left an adequate remedy. *Vance v. Vance*, 108 U. S. 514, 518.

Law authorizing service of process on mayor or clerk may be changed to require service on the mayor without impairing obligation of prior contracts. *Perkins v. Watertown*, 5 Biss. 320.

Ch. 49, Laws of 1858, made fraud in procuring railroad farm mortgages or want of consideration an absolute defense in suit, even by an innocent holder for value. *Held*, to impair the obligation of the contract. *Cornell v. Hichens*, 11 Wis. 368.

Ch. 88, Laws of 1861, greatly modified the remedy upon farm mortgages to corporations. It required security for costs; deprived parties of trial before court, substituting a referee, with extremely dilatory procedure before him; gave intermediate appeal on rulings as to evidence, with stay; extended the time for appeal four years, with stay meanwhile, apparently without bond; provided that no title should be acquired on the sale under any judgment until that time for appeal expired; provided that such sale should be of no effect in case of reversal; denied the right to any deficiency judgment; denied plaintiff right of appeal until he had paid all costs; required suit on the note or bond alone to be in the county where the mortgaged premises were situated; declared that the plaintiff should be deemed to hold the security *prima facie* with full notice of all equities; stayed all sales under power of sale in the mortgage, in case misrepresentation or want of consideration were alleged, until such issue should be finally determined; and deprived the plaintiff of all other remedies except those specified in the chapter. This act was held to so burden the remedy as to impair the obligation of the contract. The court said that several of the detailed provisions, taken alone,— as, for example, the requirement of security for costs, — would not of themselves have that effect, but that the purpose of the act was so obviously to embarrass, restrict, and postpone the enforcement of these mortgages according to their terms that it must be held void. *Oatman v. Bond*, 15 Wis. 20.

A law authorizing the issue of certain city bonds required the levy of a tax to meet the same. A subsequent act pro-

hibited the city from raising any taxes, except for each year's interest as it accrued. *Held,* unconstitutional so far as it prohibited a tax to meet judgments on previously defaulted interest. *State ex rel. Soutter v. Common Council of Madison,* 15 Wis. 30.

Suspension of all process against volunteers "during service" *held* to impair the obligation of the contract, because it deprived the creditor of all remedy for an indefinite period,— as the court said, "five, ten, or twenty years." *Hasbrouck v. Shipman,* 16 Wis. 296. The contrary has been held in other states, where the suspension was not indefinite. *McCormick v. Rusch,* 15 Iowa, 127; *Breitenbach v. Bush,* 44 Pa. St. 313; *Clark v. Martin,* 49 Pa. St. 299.

Statute making order of publication proof of sufficiency of grounds therefor *held* not constitutional as applied to pre-existing void judgments. *Nelson v. Rountree,* 23 Wis. 367.

Statute giving subcontractor's lien limited by the amount of the owner's debt to the contractor, changed to make owner liable without limit, *held* to modify the obligation of existing contract between owner and building contractor, and therefore unconstitutional. *Hall v. Banks,* 79 Wis. 229.

Statute giving debtor power to vacate the lien of an execution or attachment by making assignment within ten days thereafter impairs obligation of existing contracts and is unconstitutional. *Second Ward S. Bank v. Schranck,* 97 Wis. 250; *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488; *Eau Claire Nat. Bank v. Macauley,* 101 Wis. 304.

Statute prohibiting sale, under power contained in a mortgage, for less than two thirds of an appraisal, and giving one year for redemption, *held* to impair the obligation. *Bronson v. Kinzie,* 1 How. 311.

Law staying execution of a judgment or enforcement of a contract impairs the obligation. *Barnitz v. Beverly,* 163 U. S. 118, and cases there cited.

Laws requiring that negotiable coupons from existing state bonds must, before receipt for taxes, be accompanied by principal bond, and that their genuineness be established without expert evidence, *held* to impair obligation. Production of principal bond inconsistent with contracted negotiability of separate coupons. Expert evidence only way to prove genuineness of printed coupons, and its exclusion worked complete repudiation. Intent to repudiate the coupons was obvious, and above provisions only parts of general scheme. *McGahey v. Virginia*, 135 U. S. 685.

In the light of the general rules on the subject, and the foregoing illustrations of their application, we turn to an examination of the changes in procedure for enforcement of claims not allowed by the council, accomplished by amendment of defendant's charter. Under the former law, jurisdiction of the court could be invoked by service of summons, which, if accompanied by complaint, the city must answer within twenty days, except for extension of time in discretion of court. Defects in summons or service thereof could be waived by voluntary appearance. Mistakes in procedure whereby plaintiff failed of hearing on the merits usually worked only nonsuit, and he might sue again, subject only to statute of limitations. In contrast with this procedure, it is pointed out that under the charter of 1891 the plaintiff, before invoking jurisdiction of any court, must file his claim with the city clerk, and must await examination by the comptroller, and action of the council disallowing it, which may postpone him sixty days, instead of twenty. Further, in order to reach a judicial forum, he must give security for costs in a form prescribed by law, and with sufficient sureties. He must obtain approval of the sureties by the city attorney and comptroller. Practically, he must do this within twenty days, appellant contends; for, if a new bond be rendered necessary by a disapproval, that must be filed within that period from the

disallowance of the claim. No method for coercing the action of these officers is expressly provided. Appellant also suggests the possible absence of either, casual or intentional, as a contingency burdening a claimant's chances of reaching the court. Lastly and most urgently, counsel dwells on the asserted inability to correct any mistakes by amendment, and on the fatal effect of any such mistakes, not only on the action, but upon the cause of action as well.

Some of these changes are too immaterial to require extended comment. Service of notice of appeal on the city clerk in lieu of service of summons on the mayor is so. Nor are we impressed with the importance of the asserted inability of a claimant to cure defects in procedure by amendment. It can hardly be said that there is any vested right to make mistakes. A variance of policy as to liberality in permitting amendment cannot be said to impair the obligation of any contract. A law permitting amendment of attachment affidavit has been held valid as to existing contracts and actions. *Rosenthal v. Wehe*, 58 Wis. 621. Why not the converse? The fact that a failure to obtain judgment by reason of errors in procedure or lack of proof, which in ordinary practice would result only in nonsuit, leaves claimant barred of his claim, no more affects the obligation than does a statute of limitations leaving reasonable time to sue, but expiring before the defectiveness of an attempted suit is discovered. It certainly comes no nearer such obligation than does an act taking away one's right to a second trial as of course after a judgment in ejectment. *Sydnor v. Palmer*, 32 Wis. 406.

Perhaps the most cogent of appellant's objections to the new procedure is that there is a period of suspension of his right to sue, resulting from the requirement that he must first present his claim to the council and await its disallowance. It is by no means certain that such obstacle is a new one. It has been held that the statute (secs. 79, 80, ch. 15,

R. S. 1858) requiring claims to be presented to town boards of audit before they could be paid, impliedly prohibited suit until that had been done. *Putnam v. Rubicon*, 32 Wis. 498. That statute is not very obviously distinguishable from the requirements of the *Oshkosh* charter of 1883, either in the procedure indicated or the legislative purpose to be accomplished. It is not, however, necessary to decide upon their identity at this time. It will be observed that while unconstitutionality has been ascribed to legislation which directly postponed the ultimate acts for the enforcement of a contract right, as by staying execution or creating or extending period of redemption from judicial sales (*Barnitz v. Beverly*, 163 U. S. 118), no case has been cited to us, and none discovered, where reasonable delay, resulting incidentally from the requirement of certain new steps in procedure, or from enlargement of time for taking such steps, has been held fatal, provided such legislation did not clearly appear to be in bad faith and for the purpose of defeating or impairing the very obligations of the contract. On the other hand, such modifications of proceedings imposing either increased burdens or increased time have been recognized as legitimate exercise of legislative power over remedies and procedure. *Von Baumbach v. Bade*, 9 Wis. 559; *Starkweather v. Hawes*, 10 Wis. 125; *Lee v. Buckheit*, 49 Wis. 54; *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301; *Vance v. Vance*, 108 U. S. 514; *Clark v. Martin*, 49 Pa. St. 299. In addition to these instances, it is worthy of note that very many such enactments have been enforced without challenge, some of them since very early days; thus adding the tacit consensus of legislature, courts, and the profession to a construction of the constitution which permits them. Among such may be noted the adoption, with reference to claims against counties, of the same policy as that with reference to cities, now complained of (secs. 676, 682, 683, Stats. 1898); the postponement of suits against towns until after presentation

and consideration of claim (sec. .824); the stay laws for purposes of reassessments (sec. 1210b; *Plumer v. Marathon Co.* 46 Wis. 163); and many others. The requirement that before invoking judicial action the claimant must submit his claim to consideration of the common council is not a serious burden upon him. In practical affairs the instances are rare, if not unknown, that a claimant commences suit until he has first invited payment without suit. The effect of the charter of 1891 is to limit, not enlarge, the period necessary to constitute a demand and refusal of payment. In the matter of demands against municipalities the importance of momentary opportunity to sue is far less than with individual debtors, who during even a few days may by transfer of property or otherwise become execution proof, and thus defeat the purpose of an action.

The only remaining obstacle to judicial hearing and enforcement which appellant urges upon our attention is the requirement of a bond for costs in the sum of $150. This is in itself hardly a new burden; for our practice statutes have since long prior to 1883 subjected plaintiffs to a security for costs, in the discretion of the court, in still larger amount. Independently of this view, however, the absolute requirement that a plaintiff shall furnish reasonable security for costs, as prerequisite to suit, cannot be considered so completely a denial of adequate remedy as to impair the obligation of existing contracts. It is a very usual requirement of practice statutes and rules. If .our statutes were changed so that such a preliminary were absolutely required by law for all suits, instead of being permissibly required by the court as now, we apprehend there could be no doubt that such change is within the legitimate control of the legislature over procedure. Such is the suggestion in *Oatman v. Bond*, 15 Wis. 20. But counsel urges that the bond is not amendable, and a mistake therein is fatal to the cause of action. The answer to this suggestion

226     SUPREME COURT OF WISCONSIN.     [109

The Oshkosh Water Works Co. vs. City of Oshkosh.

is that no mistake need be made. The charter, in terms easy of comprehension if carefully read, prescribes what the bond shall be, and compliance therewith is not difficult. A law which lays out a plain and adequate course for one to secure judicial enforcement of his contract does not impair the obligation because one straying out of the prescribed path cannot reach the goal. But, again, counsel says the statutory requirement that the bond be approved by the city attorney and comptroller renders it possible for those officers, either wilfully or by neglect, to exclude him from his remedy in court. Whether this be so has not yet been decided. If an appellant files a good and sufficient bond in compliance with law, it is by no means certain that the courts cannot coerce proper action of such city officers, at least so far as is possible without invading the field of their discretion. But it is not an impairment of the obligation of a contract to make the remedy dependent for certain steps upon the performance by public officers of their duties. The duty of the city attorney and comptroller to approve a proper bond is one cast on them by law, for breach of which one injured may have his remedy, as well as against the sheriff on whom he must depend for enforcement of an execution. All remedies depend upon performance of duty by public officers, and by breach thereof may fail. That is true even of the privilege of action in the courts, wherein breach of duty by the judge might most effectually postpone or entirely defeat the claim; but such possibility does not render the remedy inadequate.

That the change of legislative policy as to procedure upon claims against *Oshkosh* and many other cities was adopted in the utmost good faith, with no legislative purpose other than promotion of public welfare and proper protection of public funds against unlawful demands, cannot be doubted. *Putnam v. Rubicon*, 32 Wis. 498; *Seegar v. Ashland*, 101 Wis. 515. It is the duty of the courts to uphold and en-

force such deliberately adopted and important changes of policy, unless it appears clearly and beyond all reasonable controversy that the legislative power has been exceeded. *Adams v. Beloit*, 105 Wis. 363, 373. After careful consideration of the changes wrought by the amendment of 1891 to the *Oshkosh* charter, we are unable to say with the requisite certainty that the legislature has transgressed the bounds to its authority over remedies and procedure by so modifying them as to relieve the city from any obligation resting upon it by reason of the contract with plaintiff, or to so diminish the remedy as to render those obligations substantially less valuable. We, therefore, are bound to enforce the law as it is written, and affirm the decision of the trial court in sustaining the demurrer to the complaint.

*By the Court.*— Judgment affirmed.

BARDEEN, J. The obligation of a contract, in a constitutional sense, is the means provided by law by which it can be enforced. Whatever lessens the efficacy of this means, or tends to postpone or retard the enforcement of the contract, impairs the obligation. *Louisiana v. New Orleans*, 102 U. S. 203, 26 L. Ed. 132, and note; 9 Notes U. S. Rep. 1069; Baker, Ann. Const. U. S. 68. The remedies afforded by existing laws enter into and form a part of the obligation of a contract. The legislature has a right to change such remedies, and modify the laws governing procedure in court, if it leaves the party a substantial remedy according to the course of justice as it existed at the time the contract was made. *Sturges v. Crowninshield*, 4 Wheat 122. One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force. *Planters' Bank v. Sharp*, 6 How. 301. The substantial question in this case is whether the new

charter so affects the remedy as to impair the obligation of plaintiff's contract and render it less valuable. I cannot persuade myself that it does not. The conditions and restrictions thrown around the attempt to get into court are so complex and indefinite, and are to be followed with such nicety of exactness, at the peril of losing the remedy entirely, and are so completely different from those in existence when the contract was made, that in my opinion they so lessen the efficacy of the remedy, retard its enforcement, and diminish its value as to come within the condemnation of the constitution. I refer particularly to those charter provisions as to when the time within which an appeal must be taken commences to run, and the requirements relating to the giving and approval of a bond. The latter provisions seem to me to be of especial significance. The appellant must take its appeal, get its bond, and secure the approval both of the city attorney and city comptroller in twenty days, or its rights are forfeited. The charter contains no provisions regarding the responsibility of the sureties, does not say what the appellant must do to satisfy the city attorney and comptroller as to the sufficiency of the bond, but leaves it entirely to those officers to approve or not, at will. If, perchance, one of those officers should be absent from the city during the time the right to appeal is running, the appeal is lost. The old charter contained no such technical or drastic conditions. There are several other changes which to my mind tend to lessen the value of the contract and to postpone and retard its enforcement, but I need not mention them at length. The impression in this regard is so strong that I cannot agree with the conclusion of the majority of the court.